No. 25-2413

In the
United States Court of Appeals
for the Seventh Circuit

———————

SHARON WEINSTOCK, et al.,
*Plaintiffs / Appellees,*

v.

ISLAMIC REPUBLIC OF IRAN,
*Defendant,*

v.

R.J. O'BRIEN LIMITED,
*Citation Third-Party Respondent / Appellant.*

———————

On appeal from the
United States District Court
for the Northern District of Illinois
Case No. 1:23-cv-2824 (Kennelly, J.)

———————

SEPARATE APPENDIX
(REDACTED)

———————

Stacie R. Hartman
Maria K. O'Keeffe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Dr., Ste 2800
Chicago, Ill. 60606
T: 312-324-1000
stacie.hartman@morganlewis.com
maria.okeeffe@morganlewis.com

Bryan Killian
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

# TABLE OF CONTENTS

| Dkt. | Description | Date | Page |
|---|---|---|---|
| — | Docket, *Weinstock v. Islamic Republic of Iran*, No. 23-cv-2824 (N.D. Ill.) | Accessed 10/15/25 | A46 |
| 13-1 | Exhibit 1 in Support of Motion by Non-Party R.J. O'Brien Limited (RJOL) to Quash Plaintiffs' Citation to Discover Assets:<br><br>Declaration of James Gabriele | 1/8/25 | A60 |
| 31-6 | Exhibit F in Support of Plaintiffs' Consolidated Motion for Turnover, Motion in the Alternative to Compel Discovery, and Opposition to Respondents' Motions to Quash:<br><br>Reporting Institution Information, U.S. Department of the Treasury | 3/14/25 | A63 |
| 31-8 | Exhibit H in Support of Plaintiffs' Consolidated Motion for Turnover, Motion in the Alternative to Compel Discovery, and Opposition to Respondents' Motions to Quash:<br><br>Particulars of Claim, *Beneathco DMCC v. R.J. O'Brien Limited* | 3/14/25 | A68 |

| Dkt. | Description | Date | Page |
|------|-------------|------|------|
| 31-12 | Declaration in Support of Plaintiffs' Consolidated Motion for Turnover, Motion in the Alternative to Compel Discovery, and Opposition to Respondents' Motions to Quash:<br><br>Declaration of Luigi Cobelli and accompanying Citation to Discover Assets Served on R.J. O'Brien Limited | 3/14/25 | A91 |
| — | Excerpts from Transcript of Proceedings re Motions to Quash | 5/27/25 | A98 |
| 50 | Memorandum Opinion and Order Granting Plaintiffs' Motion in the Alternative to Compel Limited Jurisdictional Discovery | 5/28/25 | A105 |
| 57-1 | Exhibit A to Respondents' Limited Jurisdictional Discovery:<br><br>Declaration of David Russell<br><br>(*Filed Under Seal*) | 6/12/25 | A110 |
| 57-2 | Exhibit B to Respondents' Limited Jurisdictional Discovery:<br><br>Declaration of Christopher Bove<br><br>(*Filed Under Seal*) | 6/12/25 | A128 |

APPEAL,JANTZ,PROTO,TERMED

**United States District Court**
**Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.4) (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:23–cv–02824**

Weinstock et al v. Islamic Republic of Iran
Assigned to: Honorable Matthew F. Kennelly
Demand: $26,000
Cause: Civil Miscellaneous Case

Date Filed: 05/04/2023
Date Terminated: 05/04/2023
Jury Demand: None
Nature of Suit: 150 Contract:
Recovery/Enforcement
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Sharon Weinstock**                represented by    **Asher Perlin**
Law Office of Asher Perlin
4600 Sheridan Street
Suite 303
Hollywood, FL 33021
(786) 687–0404
Fax: Pro Hac Vice
Email: asher@asherperlin.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Moshe Weinstock**                represented by    **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Geula Weinstock**                represented by    **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Aryeh Weinstock**                represented by    **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Chaim Mishael Weinstock**        represented by    **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Estate of Dov Weinstock**        represented by    **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A46

**Plaintiff**

**Estate of Yitzchak Weinstock**                  represented by   **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Estate of Simon Dolgin**                        represented by   **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Estate of Shirley Dolgin**                      represented by   **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Islamic Republic of Iran**

**Movant**

**R.J. O'Brien Limited – UK**                     represented by   **Stacie Rachel Hartman**
Morgan Lewis
110 N. Wacker Drive
Suite 2800
Chicago, IL 60606
312–324–1592
Email: stacie.hartman@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryan Killian**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
202–739–3000
Fax: 202–739–3001
Email: bryan.killian@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Kaitlin O'keeffe**
Morgan, Lewis & Bockius LLP
110 N. Wacker Drive
Ste 2800
Chicago, IL 60606
312–324–1000
Fax: 312–324–1001
Email: maria.okeeffe@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Movant**

**JVMC Holdings Corp.**                           represented by   **Stacie Rachel Hartman**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Bryan Killian**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Kaitlin O'keeffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**James Gabriele**                    represented by    **Stacie Rachel Hartman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryan Killian**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Kaitlin O'keeffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**Brad Giemza**                    represented by    **Stacie Rachel Hartman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryan Killian**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Kaitlin O'keeffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**R.J. O'Brien & Associates LLC**                    represented by    **Stacie Rachel Hartman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryan Killian**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Kaitlin O'keeffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/04/2023 | 1 | REGISTRATION of Foreign Judgment by All Plaintiffs from Southern District of Florida, Case Number 17−cv−23272; Judgment for All Plaintiffs and against Islamic Republic of Iran in the amount of $26291000 entered on 05/02/2019. Filing fee $ 49, receipt number AILNDC−20608260. (Perlin, Asher) (Entered: 05/04/2023) |

A48

| | | |
|---|---|---|
| 05/04/2023 | 2 | CIVIL Cover Sheet (Perlin, Asher) (Entered: 05/04/2023) |
| 05/04/2023 | 3 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–20608424. (Perlin, Asher) (Entered: 05/04/2023) |
| 05/04/2023 | 4 | Designation of Local Counsel by Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock (Perlin, Asher) (Entered: 05/04/2023) |
| 05/04/2023 | | ***Civil Case Terminated. (lw, ) (Entered: 06/26/2023) |
| 05/05/2023 | | CASE ASSIGNED to the Honorable Matthew F. Kennelly. Designated as Magistrate Judge the Honorable Beth W. Jantz. Case assignment: Random assignment. (lm, ) (Entered: 05/05/2023) |
| 05/05/2023 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post–trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (lm, ) (Entered: 05/05/2023) |
| 05/17/2023 | 5 | MINUTE entry before the Honorable Matthew F. Kennelly: Attorney Asher Perlin's motion to appear pro hac vice 3 is granted. Mailed notice. (mma, ) (Entered: 05/17/2023) |
| 06/27/2023 | 6 | MINUTE entry before the Honorable Matthew F. Kennelly: By no later than 7/5/2023, the parties (or, if no defendant has yet appeared, the plaintiff(s)) are to file a joint status report that includes the following information: (1) the status of service of process over each defendant; (2) a description of each party's claims and defenses; (3) details regarding any discussions concerning settlement, whether before or after the filing of the lawsuit; (4) a proposed discovery and pretrial schedule; and (5) any other matters that any party wishes to bring to the Court's attention. The case is set for a case management conference under Federal Rule of Civil Procedure 16 on 7/11/2023 at 9:05 a.m. The case management conference will be conducted by telephone, using the following call–in number: 888–684–8852, access code 746–1053. Plaintiff's counsel is directed to provide a copy of this order to any defendant that has not yet appeared by counsel via regular mail at the address at which the defendant has been or is to be served with process. (mk) (Entered: 06/27/2023) |
| 07/06/2023 | 7 | NOTICE by All Plaintiffs re set/reset hearings,,,, 6 Status Report (Perlin, Asher) (Entered: 07/06/2023) |
| 07/07/2023 | 8 | MINUTE entry before the Honorable Matthew F. Kennelly: Based on the status report filed by plaintiffs, the telephonic status hearing set for 7/11/2023 is vacated. (mk) (Entered: 07/07/2023) |
| 09/09/2024 | 9 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon WeinstockPLAINTIFFS JUDGMENT CREDITORS' MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER PURSUANT TO FED. R. CIV. P. 4.1(a)<br><br>(Perlin, Asher) (Entered: 09/09/2024) |
| 09/10/2024 | 10 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion to appoint a special process server 9 is granted. (mk) (Entered: 09/10/2024) |
| 10/22/2024 | 11 | CITATION to Discover Assets issued as to BRAD GIEZMA, R.J. O'BRIEN LIMITED c/o Brad Giemza, R.J. O'BRIEN LIMITED c/o James Gabriele, JAMES GABRIELE, JVMC HOLDINGS CORP. c/o Melissa Zierk, (Third Party – No Notice Filed). (jh, ) (Entered: 10/23/2024) |

| 01/08/2025 | 12 | ATTORNEY Appearance for Movants R.J. O'Brien Limited – UK, JVMC Holdings Corp., James Gabriele, Brad Giemza by Stacie Rachel Hartman (Hartman, Stacie) (Entered: 01/08/2025) |
|---|---|---|
| 01/08/2025 | 13 | MOTION by Movant R.J. O'Brien Limited – UK to quash *PLAINTIFFS CITATION TO DISCOVER ASSETS*<br><br>(Attachments: # 1 Declaration Gabriele, # 2 Declaration Warren–Smith, # 3 Declaration Hartman)(Hartman, Stacie) (Entered: 01/08/2025) |
| 01/08/2025 | 14 | MOTION by Movants JVMC Holdings Corp., James Gabriele, Brad Giemza to quash *PLAINTIFFS CITATIONS TO DISCOVER ASSETS AND SUBPOENAS*<br><br>(Attachments: # 1 Declaration Gabriele, # 2 Declaration Warren–Smith, # 3 Declaration Hartman)(Hartman, Stacie) (Entered: 01/08/2025) |
| 01/08/2025 | 15 | ATTORNEY Appearance for Movants R.J. O'Brien Limited – UK, JVMC Holdings Corp., James Gabriele, Brad Giemza by Maria Kaitlin O'keeffe (O'keeffe, Maria) (Entered: 01/08/2025) |
| 01/09/2025 | 16 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court sets this case for a telephonic status hearing on 1/14/2025 at 8:55 AM, using call–in number 650–479–3207, access code 2305–915–8729. (mk) (Entered: 01/09/2025) |
| 01/10/2025 | 17 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–22933586.<br><br>(Attachments: # 1 Exhibit A)(Killian, Bryan) (Entered: 01/10/2025) |
| 01/11/2025 | 18 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion by Bryan Killiam to appear pro hac vice 17 is granted. (mk) (Entered: 01/11/2025) |
| 01/12/2025 | 19 | MOTION by Plaintiffs Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Estate of Dov Weinstock, Estate of Yitzchak Weinstock, Estate of Simon Dolgin, Estate of Shirley Dolgin to set a briefing schedule *for Citation Respondents' motions to quash*<br><br>(Perlin, Asher) (Entered: 01/12/2025) |
| 01/13/2025 | 20 | ATTORNEY Appearance for Movants R.J. O'Brien Limited – UK, JVMC Holdings Corp., James Gabriele, Brad Giemza by Bryan Killian (Killian, Bryan) (Entered: 01/13/2025) |
| 01/14/2025 | 21 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 1/14/2025. Plaintiffs' motion for entry of briefing schedule 19 is granted. Plaintiffs' opposition to the motion to quash is due by 3/10/2025 and the respondents' reply is due 4/14/2025. The case is set for a telephonic status hearing on 4/22/2025 at 9:00 a.m. The following call–in number will be used for the hearing: 650–479–3207; access code 2305–915–8729. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 01/14/2025) |
| 01/16/2025 | 22 | CITATION to Discover Assets issued as to R.J. O'Brien Limited. (Third Party)(No Notice Filed) (rc, ) (Entered: 01/16/2025) |
| 01/26/2025 | 23 | MOTION by Plaintiffs Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Estate of Dov Weinstock, Estate of Yitzchak Weinstock, Estate of Simon Dolgin, Estate of Shirley DolginOrder Directing Plaintiffs to Give Notice of Proceedings<br><br>(Attachments: # 1 Exhibit Proposed Notice)(Perlin, Asher) (Entered: 01/26/2025) |
| 01/27/2025 | 24 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' unopposed motion for an order pursuant to sections 2–1402(g) and 12–710(a) of the Illinois Code of Civil Procedure 23 is granted. (mk) (Entered: 01/27/2025) |

| 01/27/2025 | 25 | ATTORNEY Appearance for Movant R.J. O'Brien & Associates LLC by Stacie Rachel Hartman (Hartman, Stacie) (Entered: 01/27/2025) |
|---|---|---|
| 01/27/2025 | 26 | ATTORNEY Appearance for Movant R.J. O'Brien & Associates LLC by Bryan Killian (*pro hac vice*) (Killian, Bryan) (Entered: 01/27/2025) |
| 01/27/2025 | 27 | ATTORNEY Appearance for Movant R.J. O'Brien & Associates LLC by Maria Kaitlin O'keeffe (O'keeffe, Maria) (Entered: 01/27/2025) |
| 01/27/2025 | 28 | MOTION by Movant R.J. O'Brien & Associates LLC for joinder *to ECF 14*<br><br>(Attachments: # 1 Exhibit A)(Hartman, Stacie) (Entered: 01/27/2025) |
| 03/05/2025 | 29 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for extension of time to file response/reply as to order on motion to set a briefing schedule,,,, telephone conference,,,, set/reset hearings,,,, 21<br><br>(Perlin, Asher) (Entered: 03/05/2025) |
| 03/06/2025 | 30 | MINUTE entry before the Honorable Matthew F. Kennelly: Agreed motion for a 3–day extension of time 29 is granted. Due date for response to motion to quash is extended to 3/13/2025; due date for reply to response is extended to 4/17/2025. (mk) (Entered: 03/06/2025) |
| 03/14/2025 | 31 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak WeinstockTurnover and Related Relief *, and Opposition to Respondents' Motions to Quash*<br><br>(Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Affidavit of Steven Loble, # 11 Declaration Edward Bennion–Pedley, # 12 Declaration Luigi Cobelli)(Perlin, Asher) (Entered: 03/14/2025) |
| 03/24/2025 | 32 | Errata by Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock *for Consolidated Motion for Turnover* (Perlin, Asher) (Entered: 03/24/2025) |
| 03/26/2025 | 33 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstockfor Order Regarding Provision of Notice<br><br>(Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Declaration)(Perlin, Asher) (Entered: 03/26/2025) |
| 03/27/2025 | 34 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff's supplemental motion for an order pursuant to sections 2–1402(g) AND 12–710(a) of the Illinois Code of Civil Procedure 33 is granted. (mk) (Entered: 03/27/2025) |
| 04/02/2025 | 35 | NOTICE by All Plaintiffs *OF COMPLIANCE WITH THE COURTS ORDER OF MARCH 27, 2025* (Attachments: # 1 Declaration of Luigi Cobelli)(Perlin, Asher) (Entered: 04/02/2025) |
| 04/15/2025 | 36 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the a telephonic status hearing set for 4/22/2025 is vacated and reset to 4/28/2025 at 9:10 AM. The following call–in number will be used for the hearing: 650–479–3207; access code 2305–915–8729. (mk) (Entered: 04/15/2025) |
| 04/17/2025 | 37 | REPLY by James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited – UK to MOTION by Movant R.J. O'Brien Limited – UK to quash *PLAINTIFFS CITATION TO DISCOVER ASSETS*<br><br>13 , MOTION by Movants JVMC Holdings Corp., James Gabriele, Brad Giemza to quash *PLAINTIFFS CITATIONS TO DISCOVER ASSETS AND SUBPOENAS* |

| | | |
|---|---|---|
| | | <u>14</u> , MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak WeinstockTurnover and Related Relief , *and Opposition to Respondents' Motions to Quash*<br><br><u>31</u> *AND OPPOSITION TO PLAINTIFFS MOTION FOR TURNOVER* (Attachments: # <u>1</u> Declaration Gabriele, # <u>2</u> Declaration Warren−Smith)(Hartman, Stacie) (Entered: 04/17/2025) |
| 04/17/2025 | <u>38</u> | MOTION by Movants James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited − UK for leave to file *oversized brief (ECF 37)*<br><br>(Hartman, Stacie) (Entered: 04/17/2025) |
| 04/17/2025 | <u>39</u> | MOTION by Movant R.J. O'Brien & Associates LLC for joinder *to ECF 37*<br><br>(Hartman, Stacie) (Entered: 04/17/2025) |
| 04/20/2025 | <u>40</u> | MINUTE entry before the Honorable Matthew F. Kennelly: Non−party RJ O'Brien's motions for joinder <u>28</u> <u>39</u> and for leave to file a 20 page reply <u>38</u> are granted. (mk) (Entered: 04/20/2025) |
| 04/28/2025 | <u>41</u> | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock for leave to file *a Reply*<br><br>(Attachments: # <u>1</u> Appendix proposed Reply, # <u>2</u> Affidavit Affidavit in Support of (proposed) Reply)(Perlin, Asher) (Entered: 04/28/2025) |
| 04/28/2025 | <u>42</u> | REPLY by Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to reply to response to motion,, <u>37</u> (Attachments: # <u>1</u> Affidavit of Steven Loble)(Perlin, Asher) (Entered: 04/28/2025) |
| 04/28/2025 | <u>43</u> | AFFIDAVIT by Plaintiffs Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock in Support of MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak WeinstockTurnover and Related Relief , *and Opposition to Respondents' Motions to Quash*<br><br><u>31</u> *Apostilled Copy of Loble Affidavit Submitted with Plaintiffs' Reply (DE 42)* (Perlin, Asher) (Entered: 04/28/2025) |
| 04/28/2025 | <u>44</u> | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to continue *Oral Argument set for May 29, 2025*<br><br>(Perlin, Asher) (Entered: 04/28/2025) |
| 04/28/2025 | <u>45</u> | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 4/28/2025. Plaintiffs' motion for leave to file a reply <u>41</u> is granted. Plaintiffs' counsel is directed to file the reply as a separate docket entry. The motions to Quash are set for an in−person oral argument on 5/29/2025 at 1:30 p.m. The hearing will be held in Courtroom 2103. Mailed notice. (mma, ) (Entered: 04/28/2025) |
| 04/29/2025 | <u>46</u> | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed plaintiff's motion to continue the May 29 in−person argument. The alternative dates proposed (in June) do not work for the Court, and in any event the Court is highly disinclined to continue the matter that far out or more. The Court proposes the following alternatives: an in−person argument on either May 27 or May 28, either in the morning or the afternoon, or on May 29 but in the morning (the Court is not sure whether that would solve plaintiff's counsel's travel issue), or if none of those dates and times work, a video argument on May 29. The Court's preference is for an in−person hearing, but it will settle for a video argument if the proposed alternative in−person dates are not available. Counsel are directed to confer and get back to Judge Kennelly's courtroom deputy clerk sometime today. (mk) (Entered: 04/29/2025) |
| 04/29/2025 | <u>47</u> | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff's motion to continue <u>44</u> is granted. The in person oral argument on the motions to quash <u>13</u> <u>14</u> and |

| | | |
|---|---|---|
| | | for turnover order 31 set for 5/29/2025 is vacated and reset to 5/27/2025 at 11:00 a.m. The hearing will be held in Courtroom 2103. Mailed notice. (mma, ) (Entered: 04/29/2025) |
| 05/27/2025 | 48 | MINUTE entry before the Honorable Matthew F. Kennelly: In person motion hearing held on 5/27/2025. Oral argument heard on the movants' motion to quash and plaintiff's motion for turnover. Movants' motions to quash 13 14 and plaintiffs' motion for turnover 31 are taken under advisement. Mailed notice. (mma, ) (Entered: 05/27/2025) |
| 05/27/2025 | 49 | NOTICE by All Plaintiffs re order on motion for miscellaneous relief,, order on motion to quash,,,, motion hearing, 48 *PLAINTIFFS NOTICE OF ERRATA DURING THE HEARING ON MAY 27, 2025* (Perlin, Asher) (Entered: 05/28/2025) |
| 05/28/2025 | 50 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 5/28/2025: The grants the plaintiffs' motion to conduct limited jurisdictional discovery to the extent set forth in the accompanying Memorandum Opinion and Order. The case is set for a telephonic status hearing on June 16, 2025 at 9:00 a.m., using call–in number 650–479–3207, access code 2305–915–8729. The Court will determine, at that time, what further proceedings, if any (supplemental briefs, arguments, and/or a hearing) will be required and when they will be held. (mk) (Entered: 05/28/2025) |
| 06/12/2025 | 51 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the telephonic status hearing set for 9:00 AM on 6/16/2025 is advanced to 8:50 AM on that same date, using call–in number 650–479–3207, access code 2305–915–8729. (mk) (Entered: 06/12/2025) |
| 06/12/2025 | 52 | Motion to Enter an Agreed Confidentiality Order by R.J. O'Brien & Associates LLC, R.J. O'Brien Limited – UK (Hartman, Stacie) (Entered: 06/12/2025) |
| 06/12/2025 | 53 | NOTICE of Motion by Stacie Rachel Hartman for presentment of before Honorable Matthew F. Kennelly on 6/16/2025 at 08:50 AM. (Hartman, Stacie) (Entered: 06/12/2025) |
| 06/12/2025 | 54 | MOTION by Movants R.J. O'Brien & Associates LLC, R.J. O'Brien Limited – UK to seal  (Hartman, Stacie) (Entered: 06/12/2025) |
| 06/12/2025 | 55 | NOTICE of Motion by Stacie Rachel Hartman for presentment of motion to seal 54 before Honorable Matthew F. Kennelly on 6/16/2025 at 08:50 AM. (Hartman, Stacie) (Entered: 06/12/2025) |
| 06/12/2025 | 56 | Respondents' Limited Jurisdictional Discovery by R.J. O'Brien & Associates LLC, R.J. O'Brien Limited – UK *[Public Redacted Version]* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hartman, Stacie) (Entered: 06/12/2025) |
| 06/12/2025 | 57 | SEALED DOCUMENT by Movants R.J. O'Brien & Associates LLC, R.J. O'Brien Limited – UK *Respondents' Limited Jurisdictional Discovery* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hartman, Stacie) (Entered: 06/12/2025) |
| 06/12/2025 | 58 | *CORRECTED* NOTICE of Motion by Stacie Rachel Hartman for presentment of before Honorable Matthew F. Kennelly on 6/16/2025 at 08:50 AM. (Hartman, Stacie) (Entered: 06/12/2025) |
| 06/13/2025 | 59 | AGREED CONFIDENTIALITY ORDER signed by the Honorable Matthew F. Kennelly on 6/13/2025: Motion for entry of agreed confidentiality order and motion for leave to file under seal are granted. (mk) (Entered: 06/13/2025) |
| 06/13/2025 | 60 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon WeinstockExtend Citations  (Perlin, Asher) (Entered: 06/13/2025) |
| 06/13/2025 | 61 | RESPONSE by James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited – UKin Opposition to MOTION by Plaintiffs Estate of Dov Weinstock, Estate |

| | | |
|---|---|---|
| | | of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon WeinstockExtend Citations<br><br>60 (Hartman, Stacie) (Entered: 06/13/2025) |
| 06/16/2025 | 62 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status and motion hearings held on 6/16/2025. By no later than 6/23/2025, the citation respondents are directed to file under seal the two agreements referenced in the Russell affidavit and are also directed to file a copy of the IFEU rules that are claimed to require a non–clearing member to clear trades through a clearing member. Plaintiff's counsel is to file a supplemental memorandum by 6/30/2025; respondents are to file a response to the supplemental memorandum by 7/7/2025. The case is set for a telephonic status hearing on 7/15/2025 at 8:45 a.m. The following call–in number will be used for the hearing: 650–479–3207; access code 2305–915–8729. Plaintiff's motion to extend 60 is granted to the following extent: the existing citations are extended through 7/15/2025. Mailed notice. (mma, ) (Entered: 06/16/2025) |
| 06/23/2025 | 63 | Respondents' Limited Jurisdictional Discovery by R.J. O'Brien Limited – UK (Attachments: # 1 Exhibit 1)(Hartman, Stacie) (Entered: 06/23/2025) |
| 06/23/2025 | 64 | SEALED DOCUMENT by Movant R.J. O'Brien Limited – UK (Attachments: # 1 Exhibit 1)(Hartman, Stacie) (Entered: 06/23/2025) |
| 06/30/2025 | 65 | SEALED DOCUMENT by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock (Perlin, Asher) (Entered: 06/30/2025) |
| 07/02/2025 | 66 | Supplemental Memorandum Redacted by Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock (Perlin, Asher) (Entered: 07/02/2025) |
| 07/07/2025 | 67 | RESPONSE by Movants James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited – UK *to Plaintiffs' Supplemental Briefing Regarding Motions to Quash* (Hartman, Stacie) (Entered: 07/07/2025) |
| 07/07/2025 | 68 | SEALED DOCUMENT by Movants James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited – UK *Response to Plaintiffs' Supplemental Briefing Regarding Motions to Quash* (Hartman, Stacie) (Entered: 07/07/2025) |
| 07/08/2025 | 69 | MINUTE entry before the Honorable Matthew F. Kennelly: On pages 8–13 of the respondents' response to the plaintiffs' supplemental brief (dkt. 68), the respondents argue that the Court lacks personal jurisdiction over RJO UK because the plaintiffs' underlying TRIA claim does not "arise out of or relate to" RJO UK's contacts. In support of this argument, the respondents contend that for the plaintiffs to succeed in these turnover proceedings, the plaintiffs must show that Beneathco is an "agent or instrumentality" of Iran. The respondents contend that for the Court to make this finding, the Court must have personal jurisdiction over Beneathco itself, not just RJO UK. The plaintiffs are directed to file by 7/15/2025 a reply of no more than 7 pages addressing this argument. No further briefing after that will be permitted unless the Court asks for further briefing. The telephonic status hearing set for 7/15/2025 is vacated and reset to 7/23/2025 at 9:15 AM, using call–in number 650–479–3207, access code 2305–915–8729. (mk) (Entered: 07/08/2025) |
| 07/09/2025 | 70 | MINUTE entry before the Honorable Matthew F. Kennelly: At the request of the parties, the telephonic status hearing set for 7/23/2025 is vacated and reset to 7/18/2025 at 9:15 a.m. The following call–in number will be used for the hearing: 650–479–3207; access code 2305–915–8729. Mailed notice. (mma, ) (Entered: 07/09/2025) |
| 07/12/2025 | 71 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the telephonic status hearing set for 9:15 AM on 7/23/2025 is advanced to 9:05 AM on that same date. The following call–in number will be used for the hearing: 650–479–3207, access code 2305–915–8729. (mk) (Entered: 07/12/2025) |

| 07/14/2025 | 72 | REPLY by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to text entry,,,,, terminate hearings,,,,, set/reset hearings,,,, 69 , sealed document 68 (Perlin, Asher) (Entered: 07/14/2025) |
|---|---|---|
| 07/15/2025 | 73 | MINUTE entry before the Honorable Matthew F. Kennelly: Docket entry 71 contained an error and is corrected to state that the telephonic status hearing set for 9:15 AM on **7/18/2025** is advanced to 9:05 AM on that same date. (mk) (Entered: 07/15/2025) |
| 07/17/2025 | 74 | MINUTE entry before the Honorable Matthew F. Kennelly: At the Court's instance, the telephonic status hearing for 7/18/2025 is vacated. The Court anticipates issuing a ruling within the next week or so and will set a further date as needed at that point. (mk) (Entered: 07/17/2025) |
| 07/17/2025 | 75 | MOTION by Movants James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited – UK for leave to file *Response to Plaintiffs Supplemental Reply*<br><br>(Attachments: # 1 Respondents Proposed Response to Plaintiffs Supplemental Reply)(Hartman, Stacie) (Entered: 07/17/2025) |
| 07/18/2025 | 76 | MINUTE entry before the Honorable Matthew F. Kennelly: Respondents' motion for leave to file a surreply 75 is granted; respondents should now file the surreply as a separate docket entry. No further briefing will be permitted. (mk) (Entered: 07/18/2025) |
| 07/18/2025 | 77 | REPLY by James Gabriele, Brad Giemza, JVMC Holdings Corp., R.J. O'Brien Limited – UK to Response 67 (Hartman, Stacie) (Entered: 07/18/2025) |
| 07/21/2025 | 78 | NOTICE by All Plaintiffs re order on motion for miscellaneous relief, terminate motions 10 (Attachments: # 1 Affidavit)(Perlin, Asher) (Entered: 07/21/2025) |
| 08/07/2025 | 79 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 8/7/2025: For the reasons stated in the accompanying Memorandum Opinion and Order, the Court grants the plaintiffs' motion for turnover regarding RJO UK [dkt. 31] and denies RJO UK's motion to quash [dkt. 13]. The Court orders RJO UK to turn over the roughly $16.5 million it is holding on behalf of Beneathco. This turnover order renders all of the subpoenas and citations to JVMC, Mr. Giemza, and Mr. Gabriele moot [dkt. 14]. Plaintiffs are directed to provide a form of judgment, reviewed by respondents for form, by August 11, 2025. It should be sent in Word format to the undersigned judge's proposed order e–mail address. (mk) (Entered: 08/07/2025) |
| 08/11/2025 | 80 | MOTION by Movant R.J. O'Brien Limited – UK to stay regarding order on motion for miscellaneous relief,,, order on motion to quash,,,,,, memorandum opinion and order,,, terminate motions,,, 79<br><br>(Hartman, Stacie) (Entered: 08/11/2025) |
| 08/11/2025 | 81 | ORDER AND FINAL JUDGMENT, signed by the Honorable Matthew F. Kennelly on 8/11/2025. (mk) (Entered: 08/11/2025) |
| 08/11/2025 | 82 | MINUTE entry before the Honorable Matthew F. Kennelly: Response to motion to stay is to be filed by 8/19/2025. Telephonic motion hearing, unless deemed unnecessary by the Court, is set for 8/22/2025 at 9:15 AM, using call–in number 650–479–3207, access code 2305–915–8729. (mk) (Entered: 08/11/2025) |
| 08/12/2025 | 83 | MOTION by Movant R.J. O'Brien Limited – UK to clarify *ECF Nos. 81, 82*<br><br>(Hartman, Stacie) (Entered: 08/12/2025) |
| 08/13/2025 | 84 | MINUTE entry before the Honorable Matthew F. Kennelly: The citation respondents in this case have moved for clarification, expressing apparent confusion over the fact that the Court entered a judgment seeing as how they have filed a motion to stay pending appeal. First of all, the Court notes that until a court enters a judgment, there is nothing to appeal; the entry of judgment is what triggers the ability to appeal. So a judgment had to be entered, which is why the Court entered one. And based on the submissions that were made in connection with the form of the judgment, there was no |

A55

| | | |
|---|---|---|
| | | indication that respondents objected to the language in the order that included the 8/18/2025 date that respondents are now saying makes things unclear. The Court also observes that if respondents have not filed a notice of appeal by the time of the hearing on the motion to stay (8/22/2025), then the motion will be effectively moot—–or, perhaps more accurately, premature—–and will be subject to denial on that basis. Respondents thus need to get that figured out in fairly short order. As for what happens in the meantime, to clarify matters, the 8/18/2025 date in the judgment is stayed pending the 8/22/2025 hearing. Whether it is stayed after that date will be determined at the hearing. (mk) (Entered: 08/13/2025) |
| 08/13/2025 | 85 | NOTICE of appeal by R.J. O'Brien Limited – UK regarding orders 79 , 81 Filing fee $ 605, receipt number AILNDC–23876166. Receipt number: n (Hartman, Stacie) (Entered: 08/13/2025) |
| 08/14/2025 | 86 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 85 . (jh, ) (Entered: 08/14/2025) |
| 08/14/2025 | 87 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 85 . Notified counsel. (jh, ) (Entered: 08/14/2025) |
| 08/19/2025 | 88 | MEMORANDUM by Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock *in Opposition to Motion to Stay (ECF 80)* (Perlin, Asher) (Entered: 08/19/2025) |
| 08/21/2025 | 89 | MOTION by Movant R.J. O'Brien Limited – UK for leave to file *Reply iso Motion to Stay*<br><br>(Attachments: # 1 Appendix Respondents Proposed Reply iso Motion to Stay)(O'keeffe, Maria) (Entered: 08/21/2025) |
| 08/22/2025 | 90 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic motion hearing held on 8/22/2025. The motion by movant R.J. O'Brien for leave to file a reply 89 is granted. The motion to stay is granted but it is conditioned upon the money cannot be disbursed without getting the Court's approval. The parties are directed to send a draft proposed order in Word format to Judge Kennelly's proposed order email address by 8/26/2025. Mailed notice. (mma, ) (Entered: 08/22/2025) |
| 09/03/2025 | 91 | ORDER ON MOTION TO STAY, signed by the Honorable Matthew F. Kennelly on 9/3/2025. (mk) (Entered: 09/03/2025) |
| 09/05/2025 | 92 | STATUS Report by R.J. O'Brien Limited – UK<br><br>(Attachments: # 1 Exhibit)(Hartman, Stacie) (Entered: 09/05/2025) |
| 09/08/2025 | 93 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to seal<br><br>(Attachments: # 1 Exhibit Fully Redacted)(Perlin, Asher) (Entered: 09/08/2025) |
| 09/08/2025 | 94 | SEALED DOCUMENT by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock (Perlin, Asher) (Entered: 09/08/2025) |
| 09/08/2025 | 95 | RESPONSE by R.J. O'Brien Limited – UKin Opposition to MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to seal<br><br>93 (Attachments: # 1 Exhibit Transcript Excerpt)(Hartman, Stacie) (Entered: 09/08/2025) |
| 09/09/2025 | 96 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to seal<br><br>(Attachments: # 1 Exhibit Fully Redacted)(Perlin, Asher) (Entered: 09/09/2025) |

| 09/09/2025 | 97 | SEALED DOCUMENT by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock (Perlin, Asher) (Entered: 09/09/2025) |
|---|---|---|
| 09/16/2025 | 98 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motions to seal 93 96 are granted. The Court grants the underlying motion for ruling 94 and further grants the motion to extend 60 . The citation served upon R.J. O'Brien Limited is hereby extended through July 15, 2026. Contrary to respondent's argument, the citation has not yet been satisfied given the absence of a turnover. (mk) (Entered: 09/16/2025) |
| 09/17/2025 | 99 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for reconsideration regarding order 91<br><br>(Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Perlin, Asher) (Entered: 09/17/2025) |
| 09/18/2025 | 100 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion for reconsideration 99 is stricken because it exceeds 15 pages without prior leave of court. See N.D. Ill. LR 7.1. If plaintiffs wish to refile the motion they will need to file a document that meets the 15−page limit. (mk) (Entered: 09/18/2025) |
| 09/19/2025 | 101 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for reconsideration regarding order on motion for reconsideration,, terminate motions, 100 , order 91 *Amended Motion for Reconsideration*<br><br>(Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Perlin, Asher) (Entered: 09/19/2025) |
| 09/19/2025 | 102 | MOTION by Movant R.J. O'Brien Limited − UK to set a briefing schedule<br><br>(Hartman, Stacie) (Entered: 09/19/2025) |
| 09/20/2025 | 103 | MINUTE entry before the Honorable Matthew F. Kennelly: Response to amended motion for reconsideration is to be filed by 9/30/2025 (as requested by respondents); reply to response is to be filed by 19/7/2025. Telephonic hearing, unless deemed unnecessary by the Court, is set for 10/15/2025 at 9:10 AM, using call−in number 650−479−3207, access code 2305−915−8729. (mk) (Entered: 09/20/2025) |
| 09/21/2025 | 104 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to clarify *due date for reply memorandum*<br><br>, MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to continue *reschedule hearing*<br><br>(Perlin, Asher) (Entered: 09/21/2025) |
| 09/22/2025 | 105 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion to clarify 104 is granted. The due date for plaintiff's reply is 10/7/2025. The telephonic hearing set for 10/15/2025 is vacated and reset to 10/20/2025 at 9:10 AM, using call−in number 650−479−3207, access code 2305−915−8729. (mk) (Entered: 09/22/2025) |
| 09/30/2025 | 106 | MOTION by Movant R.J. O'Brien Limited − UK to seal<br><br>(Hartman, Stacie) (Entered: 09/30/2025) |
| 09/30/2025 | 107 | NOTICE of Motion by Stacie Rachel Hartman for presentment of motion to seal 106 before Honorable Matthew F. Kennelly on 10/3/2025 at 09:15 AM. (Hartman, Stacie) (Entered: 09/30/2025) |

| 09/30/2025 | 108 | RESPONSE by R.J. O'Brien Limited – UK in Opposition to MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for reconsideration regarding o 101 *(Redacted)* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hartman, Stacie) (Entered: 09/30/2025) |
|---|---|---|
| 09/30/2025 | 109 | SEALED DOCUMENT by Movant R.J. O'Brien Limited – UK – *Response in Opposition to Reconsideration Motion* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hartman, Stacie) (Entered: 09/30/2025) |
| 09/30/2025 | 110 | MINUTE entry before the Honorable Matthew F. Kennelly: The notice of motion filed by RJ O'Brien's counsel purporting to set a motion for hearing on 10/3/2025 is stricken. The District eliminated the notice–of–motion rule over 3 years ago, and Judge Kennelly has not reinstituted it as an individual procedure. This is made clear on his web page, which counsel should have read by this point. The motion to seal 106 is granted. RJ O'Brien must file a redacted version in the public record and a complete version, including all exhibits, under seal. (mk) (Entered: 09/30/2025) |
| 10/06/2025 | 111 | REPLY by Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for reconsideration regarding o 101 , response in opposition to motion, 108 (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Perlin, Asher) (Entered: 10/06/2025) |
| 10/06/2025 | 112 | SEALED REPLY by Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock to MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for reconsideration regarding o 101 , response in opposition to motion, 108 (Perlin, Asher) (Entered: 10/06/2025) |
| 10/10/2025 | 113 | Disclosure Pursuant to Court's Order Granting Stay by R.J. O'Brien Limited – UK (Attachments: # 1 Exhibit 1)(Hartman, Stacie) (Entered: 10/10/2025) |
| 10/10/2025 | 114 | MOTION by Movant R.J. O'Brien Limited – UK for leave to file *Short Sur–Reply for Newly Raised Points*<br><br>(Attachments: # 1 Respondents' Proposed Response to Plaintiffs' Reply in Support of their Motion for Reconsideration, # 2 Exhibits A–E to Respondents' Proposed Response to Plaintiffs' Reply in Support of their Motion for Reconsideration)(Hartman, Stacie) (Entered: 10/10/2025) |
| 10/13/2025 | 115 | MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for leave to file *Sur–surreply*<br><br>(Attachments: # 1 Supplement Proposed Sur–Surreply)(Perlin, Asher) (Entered: 10/13/2025) |
| 10/14/2025 | 116 | RESPONSE by R.J. O'Brien Limited – UK in Opposition to MOTION by Plaintiffs Estate of Dov Weinstock, Estate of Shirley Dolgin, Estate of Simon Dolgin, Estate of Yitzchak Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, Geula Weinstock, Moshe Weinstock, Sharon Weinstock for leave to file *Sur–surreply*< 115 *(Hartman, Stacie) (Entered: 10/14/2025)* |
| 10/15/2025 | 117 | TRANSCRIPT OF PROCEEDINGS held on August 22, 2025 before the Honorable Matthew F. Kennelly. Court Reporter Contact Information: Carolyn Cox, carolyn_cox@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/5/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/13/2026. (Cox, Carolyn) (Entered: 10/15/2025) |
| 10/15/2025 | 118 | TRANSCRIPT OF PROCEEDINGS held on January 14, 2025 before the Honorable Matthew F. Kennelly. Court Reporter Contact Information: Carolyn Cox, carolyn_cox@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/5/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/13/2026. (Cox, Carolyn) (Entered: 10/15/2025) |
| 10/15/2025 | 119 | TRANSCRIPT OF PROCEEDINGS held on April 28, 2025 before the Honorable Matthew F. Kennelly. Order Number: 52856, 52841. Court Reporter Contact Information: Carolyn Cox, carolyn_cox@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/5/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/13/2026. (Cox, Carolyn) (Entered: 10/15/2025) |

# __EXHIBIT 1__

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHARON WEINSTOCK, et al., | ) | |
| | ) | |
| Plaintiffs – Judgment Creditors, | ) | Case No. 1:23-cv-02824 |
| v. | ) | |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN | ) | Honorable Matthew F. Kennelly |
| | ) | |
| Defendant – Judgment Debtor, | ) | |
| | ) | |
| R.J. O'BRIEN LIMITED, JVMC HOLDINGS | ) | |
| CORP., BRAD GIEMZA and JAMES | ) | |
| GABRIELE, | ) | |
| | ) | |
| Citation Third Party | ) | |
| Respondents. | ) | |

## DECLARATION OF JAMES GABRIELE

I, James Gabriele, declare as follows:

1.      I am over the age of 18, a resident of the State of Illinois, and the Chief Financial Officer of JVMC Holdings Corp. ("JVMC"). As CFO, I am responsible for finance, treasury, and strategic planning, and reporting to the Group Chairman and CEO. This declaration is based on my personal knowledge and company records.

2.      JVMC is a Delaware corporation and holding company. One of its indirectly owned subsidiaries is R.J. O'Brien Limited ("RJO UK").

3.      RJO UK is a brokerage and clearing firm located in and operated from London, England. RJO UK is registered to do business there and is regulated by the United Kingdom's Financial Conduct Authority.

4.      I am one of five members of RJO UK's board of directors.

5.      Brad Giemza, the Group Chief Risk Officer, also serves on the RJO UK board.

A61

6.      Neither Mr. Giemza nor I are officers of RJO UK.  We are not registered agents authorized to accept service of process on behalf of RJO UK.

7.      RJO UK is not registered to do business in Illinois and does not have a registered agent to receive process here.

8.      RJO UK is an independent entity and not a branch of any US company.

9.      Beneathco DMCC ("Beneathco"), a United Arab Emirates company, was a customer of RJO UK and its Dubai-based sister company; Beneathco did not and does not have an account with any other RJO entity.

10.     There is approximately $16.5 million frozen in Beneathco's account at RJO UK.

11.     JVMC, Mr. Giemza, and I did not have any dealings with Beneathco, either before or after OFAC's listing it as a Specially Designated National.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 7, 2025

James Gabriele

# **Exhibit F**

OMB No. 1505-0164

**REPORT ON BLOCKED PROPERTY – FINANCIAL***
(Use of this form is optional, but the information requested is required by 31 C.F.R. § 501.603)

**UNITED STATES DEPARTMENT OF THE TREASURY**
**OFFICE OF FOREIGN ASSETS CONTROL**

### REPORTING INSTITUTION INFORMATION

| | |
|---|---|
| **INSTITUTION NAME** | R.J. O'Brien & Associates LLC |
| **ADDRESS** | 222 South Riverside Plaza, Suite 1200 |
| **CITY** | Chicago |
| **STATE** | Illinois |
| **POSTAL CODE** | 60606 |
| **COUNTRY** | United States |
| **CONTACT PERSON NAME** | Brian Egan |
| **TITLE** | Steptoe & Johnson LLP (counsel to R.J. O'Brien & Associates LLC) |
| **TELEPHONE NUMBER** | 202-429-8009 |
| **E-MAIL ADDRESS** | began@steptoe.com |
| **DATE PREPARED** | 02/06/2020 |

### TRANSACTION INFORMATION*

| | |
|---|---|
| **VALUE (USD)** | US $16,501,515.22 |
| **VALUE DATE** | 02/05/2020 |
| **DATE OF BLOCKING** | 01/24/2020 |
| **TYPE OF TRANSACTION OR PROPERTY** (e.g., wire transfer, account, letter of credit, check, securities) | Account |
| **LEGAL AUTHORITY OR AUTHORITIES FOR BLOCKING** (e.g., 31 C.F.R Part 560) | 31 C.F.R. Part 560, EO 13846 |
| **SANCTIONS TARGET / NEXUS** (e.g., name of Specially Designated National or blocked person) | Beneathco DMCC |
| **ORIGINATOR NAME & ADDRESS** | N/A |
| **ORIGINATING FINANCIAL INSTITUTION NAME & ADDRESS** | N/A |
| **SENDER'S CORRESPONDENT** (if applicable) | N/A |
| **RECEIVER'S CORRESPONDENT** (if applicable) | N/A |
| **INTERMEDIARY FINANCIAL INSTITUTION NAME & ADDRESS** | N/A |
| **BENEFICIARY FINANCIAL INSTITUTION NAME & ADDRESS** | N/A |
| **BENEFICIARY NAME & ADDRESS** | N/A |
| **SENDER'S REFERENCE** | N/A |
| **BANK REFERENCE NUMBER** | N/A |
| **ORIGINATOR TO BENEFICIARY AND / OR BANK TO BANK INFORMATION** | N/A |

* For blocked accounts, checks, letters of credit, securities, and other financial property, some of the above fields may not be applicable. Complete all applicable fields and include all other relevant information (e.g., account number, check number, drawee bank) in the "Additional Relevant Information" field on page 2. To report other types of blocked property, please use the form "Report on Blocked Property – Tangible/Real/Other Non-financial Property" (Form TD-F 93.08).
**PLEASE INCLUDE A COPY OF ANY PAYMENT OR TRANSFER INSTRUCTIONS OR OTHER RELEVANT DOCUMENTATION AS A SEPARATE ATTACHMENT**

TD-F 93.02

**ADDITIONAL RELEVANT INFORMATION**

R.J. O'Brien & Associates LLC (RJO) is a U.S.-based commodities futures and brokerage clearing firm. Beneathco DMCC is a customer of RJO's U.K. affiliate, R.J. O'Brien Limited (RJO UK). RJO UK is located at 1, 100 Cheapside, London EC2V 6DT, United Kingdom. Beneathco DMCC has maintained an account with RJO UK since April, 2019.

As of the time that Beneathco DMCC was added to the List of Specially Designated Nationals and Blocked Parties (SDN List), Beneathco DMCC's account with RJO UK contained certain positions in the energy futures markets. RJO UK has liquidated these futures positions and is now holding Beneathco DMCC's liquidated holdings (approximately $16.5 million) in a blocked interest-bearing account. The funds are maintained by RJO UK in London, U.K. in a segregated account that is held internally on the books of RJO UK.

There are also two remaining, offsetting futures positions, which are a long position of 20 contracts of Mini Singapore Jet Kerosene (Platt) Futures which offsets a short position of 2 contracts of Singapore Jet Kerosene SWP Futures. The underlying product is the same, but the contracts are different. As of February 5, 2020 the open trade equity for these positions was $14,135.00.

Attached please find a summary of Beneathco's account with RJO UK.

Public reporting burden for this collection of information is estimated to average 30 minutes per response. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. Send comments regarding this burden estimate or any other aspect of this collection of information to the Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Freedman's Bank Building, Washington, DC 20220.



## DAILY TRADING STATEMENT

BENEATHCO DMCC
UNIT NO 5459 ALMAS TOWER
PLOT NO JLT-PH1-A0
JUMEIRAH LAKE TOWERS
DUBAI

STATEMENT DATE: 05-FEB-20
CLIENT: BENEATHCO DMCC

ACCOUNT: BNTC

PAGE : 1

O P E N   P O S I T I O N S

| | MARKET | LONG | SHORT | CONTRACT DESCRIPTION | | SETTL PRICE | CCY | DEBIT/CREDIT |
|---|---|---|---|---|---|---|---|---|
| | ICE | | | | | | | |
| TOTAL | ICE | | | 2 SRS fut FEB 20 | EX- 28-FEB-20 | 64.793 | USD | 34 814.00 |
| | | | | | | | USD | 34 814.00 |
| | ICE | | | | | | | |
| | ICE | 20 | | RSM Fut FEB 20 | EX- 28-FEB-20 | 64.793 | USD | -20 679.00 |
| TOTAL | ICE | | | | | | USD | -20 679.00 |

O P E N   P O S I T I O N S

| DATE | MARKET | LONG | SHORT | CONTRACT DESCRIPTION | | PRICE | CCY | DEBIT/CREDIT |
|---|---|---|---|---|---|---|---|---|
| 13-JAN-20 | ICE | 8 | | RSM Fut FEB 20 | | 76.550 | USD | -9 405.60 |
| 14-JAN-20 | ICE | 9 | | RSM Fut FEB 20 | | 75.000 | USD | -9 186.30 |
| 24-JAN-20 | ICE | 3 | | RSM Fut FEB 20 | | 71.750 | USD | -2 087.10 |
| TOTAL | | 20 | | | EX 28-FEB-20 S.P. | 64.793 | USD | -20 679.00 |
| | | | | | AVERAGE LONG | 75.13250 | | |
| | | | | | | | | |
| 03-JAN-20 | ICE | | 2 | SRS fut FEB 20 | | 82.200 | USD | 34 814.00 |
| TOTAL | | | 2 | | EX 28-FEB-20 S.P. | 64.793 | USD | 34 814.00 |
| | | | | | AVERAGE SHORT | 82.20000 | | |

**Account Summary as of 05-FEB-20**

| | Seg. USD | BASE CURRENCY USD |
|---|---|---|
| SPOT RATE | 1.000000000000000 | 1.000000000000000 |
| ACCOUNT CASH BALANCE | 16 581 514.22 | 16 581 514.22 |
| INTERESTS ON EXCESS/DEFAULT | 0.00 | 0.00 |
| REALIZED PROFIT/LOSS | 0.00 | 0.00 |
| PREMIUMS | 0.00 | 0.00 |
| COMMISSIONS | 0.00 | 0.00 |
| NEW CASH BALANCE | 16 581 514.22 | 16 581 514.22 |
| OPEN TRADE EQUITY | 14 135.00 | 14 135.00 |
| TOTAL EQUITY | 16 595 649.22 | 16 595 649.22 |
| UNSETTLED PROFIT/LOSS | 0.00 | 0.00 |
| UNSETTLED POSITIONS | 0.00 | 0.00 |
| FORWARD OPEN TRADE EQUITY | 0.00 | 0.00 |
| NET LIQUIDATING VALUE | 16 595 649.22 | 16 595 649.22 |
| SECURITIES ON DEPOSIT | 0.00 | 0.00 |
| TOTAL NET LIQUIDATING VALUE | 16 595 649.22 | 16 595 649.22 |
| INITIAL MARGIN | 0.00 | 0.00 |
| COLLATERAL USED | 0.00 | 0.00 |
| MARGIN DEFAULT/EXCESS | 16 595 649.22 | 16 595 649.22 |

Last 5 values of : NET LIQUIDATING VALUE　　　(USD)

| D-4 | D-3 | D-2 | D-1 | Today |
|---|---|---|---|---|
| 16 595 649.22 | 16 595 649.22 | 16 595 649.22 | 16 595 649.22 | 16 595 649.22 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

Please check these transaction details and contact us immediately if you do not agree with them via rjouk-backoffice@rjobrien.com or + 44 207 390 7780.
All LME registered contracts are subject to the rules and regulations of the LME.
No warranty or representation of any kind is made with regards to the accuracy or completeness of the information contained herein. Whilst reasonable care has been taken in the preparation of this information, errors and omissions are excepted. R.J. O'Brien Limited is authorised and regulated by the UK Financial Conduct Authority, under FCA register no.: 114120. (ver. March 2015)

A66



## DAILY TRADING STATEMENT

BENEATHCO DMCC
UNIT NO 5459 ALMAS TOWER
PLOT NO JLT-PH1-A0
JUMEIRAH LAKE TOWERS
DUBAI

STATEMENT DATE: 05-FEB-20
CLIENT: BENEATHCO DMCC 1

ACCOUNT: BNTC1

PAGE: 1

### Account Summary as of 05-FEB-20

|  | Seg. USD | BASE CURRENCY USD |
|---|---|---|
| SPOT RATE | 1.000000000000000 | 1.000000000000000 |
| ACCOUNT CASH BALANCE | -79 999.00 | -79 999.00 |
| INTERESTS ON EXCESS/DEFAULT | 0.00 | 0.00 |
| REALIZED PROFIT/LOSS | 0.00 | 0.00 |
| PREMIUMS | 0.00 | 0.00 |
| COMMISSIONS | 0.00 | 0.00 |
| NEW CASH BALANCE | -79 999.00 | -79 999.00 |
| OPEN TRADE EQUITY | 0.00 | 0.00 |
| TOTAL EQUITY | -79 999.00 | -79 999.00 |
| UNSETTLED PROFIT/LOSS | 0.00 | 0.00 |
| UNSETTLED POSITIONS | 0.00 | 0.00 |
| FORWARD OPEN TRADE EQUITY | 0.00 | 0.00 |
| NET LIQUIDATING VALUE | -79 999.00 | -79 999.00 |
| SECURITIES ON DEPOSIT | 0.00 | 0.00 |
| TOTAL NET LIQUIDATING VALUE | -79 999.00 | -79 999.00 |
| INITIAL MARGIN | 0.00 | 0.00 |
| COLLATERAL USED | 0.00 | 0.00 |
| MARGIN DEFAULT/EXCESS | -79 999.00 | -79 999.00 |

Last 5 values of : NET LIQUIDATING VALUE        (USD)

| D-4 | D-3 | D-2 | D-1 | Today |
|---|---|---|---|---|
| -79 999.00 | -79 999.00 | -79 999.00 | -79 999.00 | -79 999.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

Please check these transaction details and contact us immediately if you do not agree with them via rjouk-backoffice@rjobrien.com or + 44 207 390 7780.
All LME registered contracts are subject to the rules and regulations of the LME.
No warranty or representation of any kind is made with regards to the accuracy or completeness of the information contained herein. Whilst reasonable care has been taken in the preparation of this information, errors and omissions are excepted. R.J. O'Brien Limited is authorised and regulated by the UK Financial Conduct Authority, under FCA register no.: 114120. (ver. March 2015)

A67

# **Exhibit H**



Claim No.

IN THE HIGH COURT OF JUSTICE

**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**

**COMMERCIAL COURT (KBD)**

BETWEEN

**BENEATHCO DMCC**

**Claimant**

**- and –**

**R.J. O'BRIEN LIMITED**

**Defendant**

———————————————————

**PARTICULARS OF CLAIM**

———————————————————

**Parties**

1.　The Claimant, Beneathco, is a company registered in Dubai, UAE. Its business is the trading of petroleum products.

2.　The Defendant, R.J. O'Brien Limited, is a company registered in the UK, with registered address 100 Cheapside, London, United Kingdom, EC2V 6DT, company number 01810354. The Defendant is a firm of futures brokers.

**Background**

<u>Commencement of the parties' relationship</u>

3.　On 4 March 2019, the Claimant completed and returned an application form to open an account with the Defendant. The application form provided that once the Defendant had

1

A69

processed the form, it would issue the applicant (i.e. the Claimant) with account opening documentation which would include terms of business.

4.  On or around 17 March 2019, having processed the application form, the Defendant accepted the Claimant's application to become a client. Despite the representation on the account opening documentation that terms of business would be provided by the Defendant to the Claimant, such terms were not provided or agreed between the parties, save for the Best Execution Agreement described below (which appears to have been intended to supplement rather than replace full terms of business). Notwithstanding the Defendant's failure to send its full terms of business, the Claimant and Defendant entered into two contracts, as particularised below.

5.  Shortly after 4 March 2019 the Defendant issued the Claimant with an 'Account Opening Form', which the Claimant executed on 17 March 2019. The 'Account Opening Form' provided *"This form and the information set out in it will constitute part of the agreement between you, (the 'Client') and R.J. O'Brien Limited. This form constitutes the Client's offer to The [sic] R.J. O'Brien Limited to receive the services provided by The R.J. O'Brien Limited. The R.J. O'Brien Limited will confirm acceptance of the offer."*

6.  So far as relevant, the agreements concluded between the Defendant and the Claimant included the following:

<u>Unwritten Contract</u>

7.  The Claimant's primary case is that it entered into an unwritten contract on the basis contemplated on the Account Opening Form (see paragraph 5 above) (the "**Unwritten Contract**"). Specifically, pursuant to the Account Opening Form terms:

    a.  The Defendant offered its derivatives contracts brokerage and clearing services via the Account Opening Form supplied to the Claimant and / or through its provision of the application form to the Claimant.

    b.  The Claimant accepted such offer by filling in the application forms and Account Opening Form, putting the Claimant in funds and giving instructions to the



Defendant to execute various transactions.

   c. Alternatively (to a. and b.) above the Claimant offered to contract with the Defendant by returning a completed Account Opening Form and the Defendant accepted such offer by opening an account and providing the relevant services after 17 March 2019.

   d. In exchange for the provision of services, Claimant agreed to pay, and did pay, consideration to the Defendant in the forms of fees and commissions.

8.   This Unwritten Contract came into force on the commencement of the parties' business relationship, which occurred shortly after the Claimant returned the completed application forms and Account Opening Form on 17 March 2019.

9.   The Claimant trades in oil products and at the material times to this dispute it would enter into derivatives contracts, such as futures and swaps. Pursuant to the Unwritten Contract:

   a. the Defendant acted as a 'clearing party' for the Claimant in exchange-trade transactions in futures, in particular between the Claimant and ICE Futures Europe (an International Commodity Exchange) ("**ICE**").

   b. the Claimant held a 'cash account' with the Defendant, the purpose of which was to receive the initial margin to cover the risk of ICE as the main party for trading derivatives.

10.   Relevant terms of the Unwritten Contract, which were implied by business efficacy and / or obviousness and / or commercial purpose were as follows:

   a. the Defendant was required to execute the Claimant's instructions to pay monies out of the Claimant's account(s) with the Defendant to a bank account, and in a currency of the Claimant's nomination, net of any obligations owed by the Claimant to the Defendant;

   b. in exchange for the Defendant's provision of services, the Claimant would pay the Defendant fees and settle other expenses, as set out on a schedule of commercial

3

A71

fees and charges labelled 'Terms and Conditions: Bencathco DMCC' and dated 16
April 2019;

   c.   The Defendant was required to act in the Claimant's best interests in the execution
of any of the Claimant's orders; and

   d.   the Defendant was required at all times to act in accordance with applicable UK
laws, including general criminal laws, as well as obligations on the Defendant under
the FCA Rulebook in fulfilling its obligations to the Claimant.

11.   For the avoidance of doubt no written terms of the Defendant were provided or otherwise
made available and no other written terms were agreed between the parties or otherwise
incorporated into the Unwritten Agreement, save for the Best Execution Contract defined
and described at paragraph 12 and following below.

<u>Best Execution Contract</u>

12.   On or around 17 March 2019, the Defendant issued the Claimant with a document entitled
'Best Execution Policy Summary – Professional Customers' (the "**Best Execution
Contract**"). The Best Execution Contract stated: "*In order to do business with you, we
require your consent to this Policy … Once you have read this Policy, please signify your
consent by either emailing consent or sending/faxing consent*." The Best Execution
Contract terms were thereby offered to the Claimant as a contract partially governing the
conduct of services between the parties.

13.   On 17 March 2019, the Claimant signed and affixed its corporate stamp to the Best
Execution Contract, in confirmation that it was accepted as a binding contract. The terms
of the Best Execution Contract will be relied upon for their full meaning and effect. Those
terms included as follows:

   a.   The cover page stated that it "*sets forth the minimum standards that both R.J.
O'Brien Limited and R. J. O'Brien (UK) Limited as well any branch office of either
entity observe when providing customers who have been categorised as
Professional Customers with best execution.*"

4

A72

b. "*Best Execution means that, subject to any specific instructions that you give us, we will take all reasonable steps to have in place arrangements that are designed to obtain the best possible execution result for you.*"

c. "*Delivering Best Execution will be subject to and take into account the nature of your orders, the priorities you have identified to us in relation to fulfilling those orders and the nature and practice of the market in question with the aim of producing what, in our view, is the best balanced result for you taking into account a range of conflicting factors. **If you give us specific instructions as to how you wish your order to be executed that we accept, we will follow these instructions***.*" (emphasis supplied)

d. "*Best Execution applies when we: • execute your orders on your behalf; and/ or • receive and transmit your orders.*"

e. "*…where an instruction is given by you, the customer, and relates to all or part of an order, we will execute in accordance with those specific instructions.*"

14. On 17 March 2019, the Claimant also filled in a form to apply to open an 'Omnibus Segregated Account' with the Defendant.

<u>Client Agreement</u>

15. In the alternative to the primary case as pleaded above, that the Defendant failed to supply (and accordingly the parties did not enter into) any further written terms beyond the Best Execution Contract pleaded above, the Claimant's alternative case is that on or around 17 March 2019 the Claimant entered into a written contract with the Defendant called the 'Professional Client Agreement' (the "**Client Agreement**"), which was governed by English law and subject to the jurisdiction of the English courts (cl. 15.1, 15.3).

16. A copy of the Client Agreement which was supplied by the Defendant's lawyers to the Claimant's lawyers on 9 February 2021 (but which on the Claimant's primary case had not been supplied previously) provide as follows:

a. Cl. 1.3: "*We shall treat you as a professional client for the purposes of the FCA*

5

A73

*Rules…. The regulatory protections concerned include formal requirements in the following areas: (a) to act in accordance with your best interests…. (d) to achieve best execution in respect of your orders; (e) to execute your orders subject to other constraints as timing and handling relative to other clients' orders; (f) to ensure that information we provide is fair, clear and not misleading*".

b. Cl. 1.5: "*This Agreement and all Transactions are subject to Applicable Regulations so that: (i) if there is any conflict between this Agreement and any Applicable Regulations, the latter will prevail; (ii) nothing in this Agreement shall exclude or restrict any obligation which we have to you under Applicable Regulations; (iii) we may take or omit to take any action we consider necessary to ensure compliance with any Applicable Regulations; (iv) all Applicable Regulations and whatever we do or fail to do in order to comply with them will be binding on you….*"

c. In Cl. 16.1: "*Applicable Regulations*" are defined in cl. 16.1 as "*(a) FCA Rules or any other rules of a relevant regulatory authority; (b) the Rules of the relevant Market and (c) all other applicable laws, rules and regulations as in force from time to time;*"; "*Market*" is defined as "*except in the LIFFE Schedule any regulated market, or multilateral trading facility (as such terms are defined in the FCA Rules*"; "*Rules*" is defined as "*articles, rules, regulations, procedures and customs, as in force from time to time;*"; and "*Transaction*" is defined as "*any transaction subject to [the Client Agreement]…*". On a proper interpretation of cl. 16.1, the FCA Rules include the FCA Handbook.

d. Cl. 6.1: "*We treat money received from you or held by us on your behalf in accordance with the Client Money Rules.*" The 'Client Money Rules' referenced are those under the FCA Handbook at 'CASS' Chapter 7, which were by cl. 6.1 thereby incorporated into the Client Agreement.

e. The Client Money Rules include, so far as relevant:

i. 7.11.7G: "*Firms are reminded of the client's best interest rule, which*

6

A74

requires a firm to act honestly, fairly and professionally in accordance with the best interests of its clients when structuring its business particularly in respect of the effect of that structure on firms' obligations under the client money rules."

ii. 7.11.26G: "*Money will not become properly due and payable to the firm merely through the firm holding that money for a specified period of time. If a firm wishes to cease to hold client money for a client it must comply with CASS 7.11.34 R (Discharge of fiduciary duty) or, if the balance is allocated but unclaimed client money, CASS 7.11.50 R (Allocated but unclaimed client money) or CASS 7.11.57 R (De minimis amounts of unclaimed client money).*"

iii. 7.12.1R: "*A firm must, when holding client money, make adequate arrangements to safeguard the client's rights*...."

iv. 7.12.2R: "*A firm must introduce adequate organisational arrangements to minimise the risk of the loss or diminution of client money, or of rights in connection with client money, as a result of misuse of client money, fraud, poor administration, inadequate record-keeping or negligence.*"

v. 7.13.4G: "*A firm should ensure that any money other than client money that is deposited in a client bank account is promptly paid out of that account unless such money is a minimum sum required to open the account, or to keep the account open.*"

vi. 7.11.34R, which is headed '*Discharge of fiduciary duty*': "*Money ceases to be client money (having regard to CASS 7.11.40 R where applicable) if: (1) it is paid to the client, or a duly authorised representative of the client*…".

f. In a clause which has been misnumbered "*6.1*", but which following the numbering scheme in the Client Agreement should be 6.13 (and which will be referred to herein as cl. 6.13), headed "*Client money*": "*If for operational, legal or regulatory reasons we notify you that we are unable or unwilling to hold some or all of your*

7

A75

*money as client money and/or you notify us that you do not wish us to hold some or all of your money as client money, when we hold such money or you transfer money to us, or money is paid to us on your behalf in such circumstances, you agree that the full ownership or the money is transferred to us: (a) for the purpose of covering your Obligations; (b) and unless you have notified us in writing to the contrary, we will not hold such money in accordance with the Client Money Rules but as cash margin as provided in this Agreement…. Money transferred to us will be recorded by us as a cash repayment obligation owed by us to you. We will transfer an equivalent amount of money back to you where, in our discretion, we consider that the amount of money you have transferred our discretion, we consider that the amount of money you have transferred to us is more than is necessary to cover your Obligations to us.*"

<u>Fiduciary duties of the Defendant</u>

17.  Pursuant to the relationships created by the above contracts (as applicable), the Defendant undertook to act for or on behalf of the Claimant in a particular matter in circumstances which give rise to a relationship of trust and confidence. Accordingly, the Defendant was under fiduciary duties towards the Claimant.

18.  Those duties included a duty of loyalty pursuant to which the Defendant was required not to place itself in a position where its duty and interest may conflict. In particular the Defendant was required by that fiduciary duty to protect the assets of the Claimant and to honour the instructions of the Claimant as regards those assets. Specifically, the Defendant's fiduciary duties required and continue to require it to carry out the instructions of the Claimant to pay out sums from the Claimant's account with the Defendant, to an account and in a currency of the Defendant's choosing – provided that such sums paid out are net of any obligations the Claimant owes to the Defendant.

**The EU Blocking Regulation and the Retained Blocking Regulation**

19. As at 24 January 2020, Council Regulation (EC) No 2271/96 of 22 November 1996 (the "**EU Blocking Regulation**") was in force in the UK.

20. The Protecting against the Effects of the Extraterritorial Application of Third Country Legislation (Amendment) (EU Exit) Regulations 2020 (SI 2020/1660), in force from 1 January 2021, amended the EU Blocking Regulation such that the latter would remain part of UK law following the end of the Brexit transition period. The retained law is called 'Council Regulation (EC) No 2271/96 of 22 November 1996 protecting against the effects of the extra-territorial application of legislation adopted by a third country, and actions based thereon or resulting therefrom (Retained EU Legislation)' (the "**Retained Blocking Regulation**").

21. The EU Blocking Regulation and the Retained Blocking Regulation contain materially the same terms, save that references to the European Community, and to EU authorities in the EU Blocking Regulation have been replaced by references to the UK and UK authorities in the Retained Blocking Regulation.

22. Art. 11(2) of the Retained Blocking Regulation provides that it shall apply to (among other parties) any legal person incorporated in the UK ("**Protected Persons**"). Art. 11(2) of the EU Blocking Regulation provides that it shall apply to any legal person incorporated in the European Community.

23. The prohibition on Protected Persons complying with certain foreign sanctions is set in art. 5 of the Retained Blocking Regulation / EU Blocking Regulation: "*No person referred to in Article 11 shall comply, whether directly or through a subsidiary or other intermediary person, actively or by deliberate omission, with any requirement or prohibition, including requests of foreign courts, based on or resulting, directly or indirectly, from the laws specified in the Annex or from actions based thereon or resulting therefrom.*"

24. Art. 4 of the Retained Blocking Regulation provides: "*No judgment of a court or tribunal and no decision of an administrative authority located outside the United Kingdom giving effect, directly or indirectly, to the laws specified in the Annex or to actions based thereon*

9

A77

*or resulting there from, shall be recognized or be enforceable in any manner.*" Art. 4 of the EU Blocking Regulation is in materially the same terms (save that European Community authorities are referred to).

25.    Pursuant to s. 2 of The Extraterritorial US Legislation (Sanctions against Cuba, Iran and Libya) (Protection of Trading Interests) Order 1996, as amended, from 1 January 2021 it is a criminal offence under English law to breach art. 5 of the Retained Blocking Regulation. Prior to that amendment it had been a criminal offence to breach the EU Blocking Regulation.

26.    Annex I to the Retained Blocking Regulation / EU Blocking Regulation sets out the foreign sanctions legislation with which compliance by Protected Persons is prohibited under art. 5. So far as relevant the list includes: (a) the Iran Sanctions Act of 1996; (b) the Iran Freedom and Counter-Proliferation Act of 2012; (c) the National Defense Authorization Act for Fiscal Year 2012; (d) the Iran Threat Reduction and Syria Human Rights Act of 2012; and (e) Iranian Transactions and Sanctions Regulations ("**ITSR**").

**The Claimant's Designation by OFAC**

27.    On 23 January 2020, the Claimant was designated by the United States Office of Foreign Assets Control ("**OFAC**") as a Specially Designated National ("**SDN**") pursuant to Executive Order 13846 ("**EO 13846**"). An announcement from OFAC dated 26 March 2020 states that the Claimant was "*Designated pursuant to section 1(a)(iii)(B) of Executive Order 13846 of August 6, 2018, 83 FR 38939, 3 CFR, 2019 Comp., p. 854 (E.O. 13846),*".

28.    The legal basis for the US President's issue of EO 13846 included but was not limited to several other pieces of US legislation, namely: (a) the Iran Sanctions Act of 1996; (b) the Iran Freedom and Counter-Proliferation Act of 2012; and (c) the Iran Threat Reduction and Syria Human Rights Act of 2012.  The ITSR imposes sanctions on, among others, persons who have been designated as SDNs under EO 13846. Accordingly, the Claimant was

10

A78

designated a SDN and made subject to sanctions with which the compliance is a criminal offence in UK law. Paragraph 25 and 26 above is repeated.

29. By a letter of 19 April 2022, OFAC confirmed that the Claimant "*is designated pursuant to section 1(a)(ii) of Executive Order (E.O.) 13846*". In that letter, OFAC confirmed further that due to its designation an SDN, the Claimant has been made subject to sanctions under the ITSR, and that "*section 560.211 of the ITSR blocks all property and interests of property of certain blocked persons, including persons designated pursuant to section 1(a)(ii) of E.O. 13846, if the property or interests in property are or come within the United States or the possession or control of a U.S. person. ITSR, § 560.211(c)(1)(ii)(B).*" The letter further refers to the Claimant as "*any other person whose property and interest in property are blocked pursuant to section 560.211*" of the ITSR.

**Events subsequent to the Claimant's Designation**

30. Pursuant to the Best Execution Contract and the Unwritten Contract (alternatively the Client Agreement), the Defendant executed various transactions on behalf of the Claimant in the period March 2019 to January 2020.

31. On 23 January 2020, the same day as the Claimant became an OFAC SDN, the Defendant transferred US$8 million from the Claimant's account with the Defendant directly into the Claimant's AED account with bank Emirates NBD. This transaction was executed only a few hours after the Claimant became part of the SDN list, despite the Defendant's position that it is not able to transfer funds to Beneathco due to US sanctions.

32. On 24 January 2020 the Claimant's broker, Mr Srinivas Radhakrishnan spoke by telephone with Mr Sayyed Hussain, an employee of the Defendant's UAE affiliate, R.J O'Brien (MENA) Capital Limited. Mr Radhakrishnan was acting as agent for the Claimant, and Mr

A79

Hussain was acting with the actual or ostensible authority of the Defendant, having been
held out by the Defendant as being able to represent its position.

33.    Mr Hussain advised Mr Radhakrishnan to ask the Claimant to close all its 'open positions'
(namely trades which had been entered but not yet closed by an opposing trade) as soon as
possible because the Claimant would no longer be able to deal with our client's account.

34.    In reliance on the advice of Mr Radhakrishnan, the Claimant closed its open positions on
the same day (24 January 2020), which resulted in a positive cash balance accruing to the
Claimant's account with the Defendant of US$16.5 million (the "**Liquidated Sum**").

35.    On 24 January 2020, RJO Dubai sent the Claimant its account statement, showing a balance
in the Claimant's account of US$16.5 million. The Claimant replied, on the same day,
instructing the Defendant to transfer the Liquidated Sum in AED into the Claimant's AED
account (the "**Instruction**").

36.    As at the date of the Instruction, the Claimant did not owe any sums to the Defendant.
Accordingly, the Claimant was entitled to be paid the entirety of the Liquidated Sum, on
demand. However, contrary to the Instruction, the Defendant failed to transfer the
Liquidated Sum.

37.    On 27 January 2020, the Claimant sent a follow-up email asking the Defendant to comply
with the Instruction. The Claimant sent several further requests for the Liquidated Sum to
be released between 27 and 31 January 2020. The Defendant failed to reply substantively
to these.

38.    On 31 January 2020, Ms Huong Hauduc, General Counsel EMEA of the Defendant,
emailed the Claimant as follows, so far as relevant:

> "…*As you know, on January 23, 2020, the US Department of the Treasury, Office
> of Foreign Assets Control (OFAC) added Beneathco DMCC to its list of Specially
> Designated Nationals and Blocked Persons pursuant to Executive Order 13846 for
> having materially assisted, sponsored, or provided financial, material, or
> technological support for, or goods or services in support of, the National Iranian*

> *Oil Company. As a result, the Iranian Transactions and Sanctions Regulations administered by OFAC, 31 C.F.R. 560, prohibit U.S. companies from engaging in any transactions involving the property or interests in property of Beneathco unless authorized by OFAC. R.J. O'Brien and its subsidiaries are required to comply with all applicable U.S. laws and regulations, including Executive Order 3846 and 31 C.F.R. 560 and other regulations issued by OFAC. Pursuant to these laws and regulations, we have taken action to block the assets in your account. Therefore funds may not be accessed. In order for us to provide access to the account, you will need to apply for a specific license from OFAC authorizing us to do so.*"

39. Accordingly, in the 31 January 2020 email above, the Defendant admitted and averred: (i) that its decision not to honour the Instruction was taken due to the Claimant being designated an SDN by OFAC, as set out in paragraph 27 above; and that (ii) the specific legislation which formed the basis for the Defendant's actions included both EO 13846 and the ITSR.

40. To date, the Defendant has refused to comply with the Instruction.

**<u>Breaches of the EU Blocking Regulation and subsequently the Retained Blocking Regulation</u>**

41. The Defendant is a legal person incorporated in the UK and is thus a 'Protected Person' under art. 11 of the Retained Blocking Regulation. For the materially same reason the Defendant was also a 'Protected Person' under the EU Blocking Regulation (as a legal person incorporated in the European Community). Accordingly, by art. 5 of the Retained Blocking Regulation / EU Blocking Regulation the Defendant is prohibited from complying with any requirement or prohibition based on or resulting, directly or indirectly, from the laws specified in the Annex or from actions based thereon or resulting therefrom.

42. The Defendant has admitted and averred in correspondence on 31 January 2020 (see paragraph 38 above) that its refusal to carry out the Instruction as regards the Liquidated

A81

Sum arose from the Defendant's belief that it was prevented from doing so due to EO 13846, the ITSR 31 C.F.R. 560 and the designation of the Claimant as an SDN.

43. For the reasons set out above in paragraphs 26 to 28 above, the enactment of EO 13846, the designation of the Claimant as an SDN, and the sanctions imposed on the Claimant were all steps pursuant to legislation the direct or indirect compliance with which is prohibited pursuant to art. 5 of the Retained Blocking Regulation / EU Blocking Regulation, as contained in the Annex to that instrument, the relevant content of which are set out at paragraph 26 above.

44. For the avoidance of doubt, a step taken by the Defendant in purported compliance with any of the legislation set out in the Annex to the Retained Blocking Regulation / EU Blocking Regulation would be a breach of art. 5 thereof. Accordingly, and although the Claimant pleads that multiple such pieces of legislation were engaged by the Defendant's actions, the legislation relied upon is alternative and not cumulative, and the Claimant's case may be sustained even if only one of those pieces of legislation formed the basis for the Defendant's actions.

45. In the premises it was unlawful and constituted a criminal offence for the Defendant to refuse to carry out the Instruction for the reasons which were admitted to by the Defendant on 31 January 2020. Between 24 January 2020 and 1 January 2021 the unlawfulness arose under the EU Blocking Regulation, and from 1 January 2021 onwards the unlawfulness arose under the Retained Blocking Regulation. The prohibition was to the same effect under both. Paragraphs 38 and 39 above are repeated.

46. Any further actions of the Defendant which are based on or result, directly or indirectly from the OFAC decision to designate the Claimant as an SDN will constitute a further criminal offence under the Retained Blocking Regulation.

47. If and to the extent that the Defendant asserts by way of any Defence to this claim that it was entitled and / or compelled under the Unwritten Contract, Client Agreement, Best Execution Contract or other contract to take any actions (or omit to take any actions) as purportedly required by EO 13846, the ITSR and associated legislation, including but not

14

A82

limited to the refusal to carry out the Instruction, then (so far as necessary) the Claimant reserves the right to rely on, *inter alia,* the criminality of such conduct by the Defendant, and further or alternatively that such conduct would be contrary to English public policy, to say that the Defendant had no such entitlement or duty.

**Breach of Contract**

Particulars of Breach

48.  Pursuant to the terms of the Unwritten Contract as pleaded at paragraph 10 above, alternatively the Client Agreement, the Defendant was required to execute the Claimant's instructions to pay monies out of the Claimant's account with the Defendant to a bank account, and in a currency of the Claimant's nomination, net of any obligations owed by the Claimant to the Defendant. The Claimant breached that obligation.

49.  If and to the extent that the Client Agreement was or is in force between the parties then the Claimant will rely (*inter alia*) on the following breaches of express terms:

   a.  Cl. 1.3: the obligation to act in the Claimant's best interests and to execute the Claimant's orders. Contrary to this obligation the Defendant failed to act in the Claimant's best interests and failed to execute the Claimant's orders, by refusing to carry out the Instruction as a result of the Defendant's purported duty to comply with US sanctions legislation, in a manner contrary to the Retained Blocking Regulation. Paragraph 41 to 45 above are repeated.

   b.  Cl. 1.5: the obligation of the Defendant to act in accordance with the Applicable Regulations, which included the FCA Rules, as well as the EU and then Retained Blocking Regulation which have at all times been the laws applicable to the Defendant by virtue of its status as a UK registered company (the EU Blocking Regulation until 1 January 2021, and the UK Blocking Regulation from that date onwards).

   c.  The Defendant breached the EU Blocking Regulation and then from 1 January 2021 the Retained Blockings Regulation in its refusal to carry out the Instruction.

Paragraph 41 to 45 above are repeated. Furthermore the Defendant also breached the Client Money Rules, which form part of the FCA Rules. Paragraph 49.d below is repeated.

d.   Cl. 6.1: the obligation on the Defendant to treat the monies held by the Defendant on the Claimant's behalf in accordance with the Client Money Rules. The Defendant breached the Client Money Rules cited at paragraph 16.e above, through its failure to adhere to the Instruction. In particular, the failure to adhere to the instruction of the Claimant, which was lawful under the governing law of the contract and under the law of all other relevant jurisdictions, was in breach of the obligation to make adequate obligation to safeguard the client's rights (CASS 7.12.1R), and the Defendant's mistaken application of US sanctions law to block the Instruction being carried out was in breach of the requirement to introduce adequate organisational arrangements to minimise the risk of the loss or diminution of client money (CASS 7.12.2R).

e.   Cl. 6.13: If and to the extent (which is not admitted) that this clause applied at all, the Defendant had a "*cash repayment obligation*" owed to the Claimant. Accordingly, it was a breach of that obligation for the Defendant to refuse to honour the Instruction.

f.   Cl 15.1 and 16.1: the obligation of the Defendant to comply with English law, unless it is required to comply with the rules of a relevant Market or a foreign regulatory authority in respect of a Transaction. Since no "Transaction" as defined in Cl. 16.1 has been instructed to the Defendant, the Defendant is required to comply with English law, which as mentioned above includes the FCA Rules and the EU Retained Bocking Regulation.

50.   Further and in the alternative, there was in the Client Agreement an implied term arising from business efficacy and / or obviousness and/or commercial purpose to the same effect as pleaded in paragraph 48 above, which was breached in the manner aforesaid.

16

A84

51. Further, pursuant to the Best Execution Agreement the Defendant was required to execute the Claimant's instructions to pay monies out of the Claimant's account with the Defendant to a bank account, and in a currency of the Claimant's nomination, net of any obligations owed by the Claimant to the Defendant. The Claimant breached that obligation. Specifically, the Claimant relies on the following breaches:

    a. The obligation pleaded at paragraph 13.b above to take all reasonable steps to have in place arrangements to obtain the best possible execution. In breach of this requirement the Defendant's inadequate processes led to it wrongfully, and in breach of the EU Blocking Regulation and then from 1 January 2021 the UK Blocking Regulation, refusing to carry out the Instruction. That refusal deprived and continues to deprive the Claimant of the use of the Liquidated Sum and accordingly did not secure the Claimant 'best execution' of its Instruction that the Liquidated Sum be released to the Claimant's account with immediate effect on 24 January 2020.

    b. The obligations pleaded at paragraphs 13.c, 13.d and 13.e above to act in accordance with the "*specific instructions*" of the Claimant. The Instruction was such a specific instruction and the Defendant has wrongfully, and in breach of contract, failed to act in accordance with it.

52. In the alternative there was in the Unwritten Contract or (if applicable) Client Agreement an implied term arising from business efficacy and / or obviousness and / or commercial purpose to the same effect as pleaded in paragraph 51 above, which was breached in the manner aforesaid.

53. The contractual breaches as pleaded at paragraphs 48 to 52 above commenced on 24 January 2020 when the Instruction was first refused and are continuing.

<u>Particulars of Loss and Damage</u>

54. By reason of the breaches of contract as aforesaid, the Claimant has suffered loss and damage, specifically the Claimants have not been able to obtain the return of the Liquidated Sum, namely US$16.5 million.

17

A85

Particulars of Interest

55. The Claimant is entitled to and claims interest at 8% per annum on the sums set out at paragraph 54 above pursuant to s. 35A of the Senior Courts Act 1981. Interest on US$16.5 million at 8% per annum is US$3,616.44 per day. 24 January 2020 to 7 June 2024 is 1596 days. Accordingly, the total interest in respect of the contractual claim as at the date of these Particulars of Claim is: US$5,771,838.24, and continues to accrue at US$3,616.44 per day.

56. Alternatively, the Claimant claims interest on damages at such rate and for such period as the Court thinks fit.

57. The Claimant seeks payment of all sums claimed herein in GBP.

Claim for sum of money expressed in a foreign currency

58. The claim is for payment in US dollars, because that is the currency used by the Claimant and the Defendants to do business and is the currency in which the loss was felt by the Claimant. The Sterling equivalent of US$16.5 million at the date of the claim is £12,900,525.00 using the rate of US$1: £0.78185 as at 7 June 2024 from the oanda.com website.

**Breach of Fiduciary Duty**

59. As set out in paragraphs 17 to 18 above, at the commencement of the parties' contractual relationship on or around 17 March 2019 the Defendant assumed fiduciary duties towards the Claimant and the Defendant remains a fiduciary. In breach of the aforementioned fiduciary duties the Defendant has failed to honour the Instruction as directed. In particular this constitutes a breach of the duty of loyalty.

60. In light of the matters pleaded above at paragraphs 17 to 18 and 59 a constructive trust exists with respect to the Liquidated Sum which continues to be withheld from the Claimant as a result of the wrongful and unconscionable actions and omissions of the Defendant.

A86



**<u>AND THE CLAIMANT CLAIMS:</u>**

    a.  In respect of the breach of contract claim the Claimant claims:

        i.   specific performance of the obligation on the Defendant under the Best Execution Contract and Unwritten Contract, alternatively the Client Agreement, to procure the release to the Claimant of the Liquidated Sum; alternatively

        ii.  damages in the principal sum of US$16.5 million; and

        iii. interest on those damages at the rate of 8% per annum pursuant to s. 35A of the Senior Courts Act 1981 until judgment or sooner payment or such other rate and for such period as the Court thinks fit.

    c.  In respect of the breach of trust claim, a declaration that there exists a constructive trust over the Liquidated Sum.

    d.  Further or other relief.

    e.  Costs.

                                              **JACOB TURNER**

7 June 2024

19

A87

**Statement of Truth**

The Claimant believes the facts stated in these Particulars of Claim are true. The Claimant understands that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth. I am duly authorised by the Claimant to sign this statement.

Signed:…………………………………

Name: Leigh Crestohl

Position / office held: Managing Partner

A88

21

A89



Claim No. _____

**IN THE HIGH COURT OF JUSTICE**

**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**

**COMMERCIAL COURT (KBD)**

**BETWEEN**

**BENEATHCO DMCC**

**Claimant**

**- and –**

**R.J. O'BRIEN LIMITED**

**Defendant**

---

**PARTICULARS OF CLAIM**

---

Zaiwalla & Co Limited
Holborn Tower
137-144 High Holborn
London WC1V 6PL

Tel: +4402073121000

Ref: LC/VZ/BEN0041

Email: leigh.crestohl@zaiwalla.co.uk & varun.zaiwalla@zaiwalla.co.uk

**Solicitors for the Claimant**

A90

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHARON WEINSTOCK, et al.,

        Plaintiffs – Judgment Creditors,

        v.

ISLAMIC REPUBLIC OF IRAN,

        Defendant – Judgment Debtor,

R.J. O'BRIEN LIMITED, JVMC HOLDINGS CORP.,
BRAD GIEMZA and JAMES GABRIELE,

        Citation Third-Party Respondents.

_____/

Civ. No. 1:23−cv−02824
Honorable Matthew F. Kennelly

### DECLARATION OF LUIGI COBELLI

    I, Luigi Cobelli, declare pursuant to 28 U.S.C. § 1746, as follows:

1.    I am over eighteen and am competent to testify about the facts personally known to me as set forth herein.

2.    I work as a Process Server and have been instructed by Steven Loble, who is a solicitor at the law firm W Legal Limited, to serve process in this matter, as described below.

3.    On January 20, 2025, I personally went to the registered, official office of R.J. O'Brien Limited, located at 100 Cheapside, London, EC2V 6DT, United Kingdom, and hand-delivered a "Citation to Discover Assets to Third Party Pursuant to Fed. R. Civ. P. 69" (the "Citation"), a copy of which is attached hereto as Exhibit A, to Mr Chris Bromham.

4.    Mr. Chris Bromham identified himself as Head of Facilities Management and agreed

1

A91

to accept the Citation on behalf of R.J. O'Brien Limited.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: January 20, 2025

_____
Luigi Cobelli

2

A92

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**(EASTERN DIVISION)**

SHARON WEINSTOCK, et al.,

                    Plaintiffs – Judgment Creditors,

        vs.                          Civ. No. 1:23−cv−02824
                                         Honorable Matthew F. Kennelly

ISLAMIC REPUBLIC OF IRAN,

                    Defendant – Judgment Debtor,

R.J. O'BRIEN LIMITED,

                    Citation Third Party Respondent.
_____/

**CITATION TO DISCOVER ASSETS TO THIRD PARTY**
**PURSUANT TO FED. R. CIV. P. 69**

To:   **R.J. O'BRIEN LIMITED**

YOU ARE REQUIRED to cause your designated corporate officer to appear by video conference on April 29, 2025, at 9:00 AM local time, before United States District Judge Matthew F. Kennelly, or any judge sitting in his stead in Courtroom 2103, or any other courtroom to which this case is subsequently assigned, of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, to be examined under oath to discover assets or property subject to execution in satisfaction of the judgment in this matter.

IF YOU FAIL TO APPEAR IN COURT AS DIRECTED IN THIS NOTICE, YOU MAY BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN JAIL.

On May 2, 2019, the United States District Court for the Southern District of Florida entered a judgment in Civil Action No. 17-23272 in favor of Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, the Estate of Yitzchak Weinstock, the Estate of Dov Weinstock, the Estate of Simon Dolgin and the Estate of Shirley Dolgin, against the Islamic Republic of Iran, in the amount of twenty-six million two hundred ninety-one thousand dollars ($26,291,000.00) in compensatory damages. That judgment was registered in the United States District Court for the Northern District of Illinois (Eastern Division) on May 4, 2023, as Case No. 1:23-cv-02824. The balance due on the judgment is twenty-four million forty-nine thousand nine hundred eighty-four dollars and seven cents ($24,049,984.07).

Your testimony will provide information regarding assets, property, moneys and credits of the Islamic Republic of Iran ("Judgment Debtor") you or your subsidiaries or affiliates may control,

1

A93

owe, possess or hold. Pursuant to the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (2002), the term "Judgment Debtor" as used in this Citation includes any agency or instrumentality of the Islamic Republic of Iran, including **Beneathco DMCC**.

YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any non-exempt property or assets of the Judgment Debtor, or to which it is entitled or which may hereafter be acquired by or become due to it, and from paying over or otherwise disposing of any non-exempt moneys or credits which are due, or become due, to the Judgment Debtor, until the further order of the court or the termination of the proceeding, whichever occurs first. The court may punish you for violating this restraining provision as and for a contempt, or enter judgment against you in the amount of the unpaid portion of the judgment and costs, or in the amount of the value of the property transferred.

### Certification of Attorney

On May 2, 2019, the United States District Court for the Southern District of Florida entered a judgment in Civil Action No. 17-23272 in favor of Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, the Estate of Yitzchak Weinstock, the Estate of Dov Weinstock, the Estate of Simon Dolgin and the Estate of Shirley Dolgin, against the Islamic Republic of Iran, in the amount of twenty-six million two hundred ninety-one thousand dollars ($26,291,000.00) in compensatory damages. That judgment was registered in the United States District Court for the Northern District of Illinois (Eastern Division) on May 4, 2023, as Case No. 1:23-cv-02824. The balance due on the judgment is twenty-four million forty-nine thousand nine hundred eighty-four dollars and seven cents ($24,049,984.07).

I certify under penalties as provided by law that the information herein is true.

Date: January 16, 2025          Plaintiffs-Judgment Creditors,
                                by their attorney,

                                By:    _/s/ Asher Perlin_____
                                       Asher Perlin, Esq.
                                       4600 Sheridan Street, Suite 303
                                       Hollywood, Florida 33021
                                       Tel. 786-687-0404
                                       Email: asher@asherperlin.com

THOMAS G. BRUTON, CLERK

(By) DEPUTY CLERK                                   January 16, 2025

                                                    DATE

A94

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)**

SHARON WEINSTOCK, et al.,

                               Plaintiffs – Judgment Creditors,

          vs.                                 Civ. No. 1:23−cv−02824
                                             Honorable Matthew F. Kennelly

ISLAMIC REPUBLIC OF IRAN,

                             Defendant – Judgment Debtor,

R.J. O'BRIEN LIMITED,

                             Citation Third Party Respondent.
_____/

## **CITATION NOTICE**

<u>Name and address of Court</u>: The United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604

<u>Name of Case</u>:

Sharon Weinstock
Moshe Weinstock
Geula Weinstock
Aryeh Weinstock
Chaim Mishael Weinstock
The Estate of Yitzchak Weinstock
The Estate of Dov Weinstock
The Estate of Simon Dolgin, and
The Estate of Shirley Dolgin,

        Plaintiffs – Judgment Creditors,

        vs.

Islamic Republic of Iran,

        Defendant – Judgment Debtor.

A95

<u>Address of Judgment Debtor</u>:

c/o Foreign Minister Seyyed Abbas Araghchi
Ministry of Foreign Affairs
Imam Khomeini St, Imam Khomeini Sq,
Teheran, Iran

<u>Name and address of Attorney for Judgment Creditor</u>:

Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021

<u>Amount of Judgment</u>: The balance due on the judgment is twenty-four million forty-nine thousand nine hundred eighty-four dollars and seven cents ($24,049,984.07).

<u>Name of Person Receiving Citation</u>: R.J. O'Brien Limited

<u>Court Date and Time</u>: April 29, 2025, at 9:00 AM local time.

NOTICE: The court has issued a citation against the person named above. The citation directs that person to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest. The citation was issued on the basis of a judgment against the judgment debtor in favor of the judgment creditor in the amount stated above. On or after the court date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law. The JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:

(1) Under Illinois or federal law, the exemptions of personal property owned by the debtor include the debtor's equity interest, not to exceed $4,000 in value, in any personal property as chosen by the debtor; Social Security and SSI benefits; public assistance benefits; unemployment compensation benefits; worker's compensation benefits; veteran's benefits; circuit breaker property tax relief benefits; the debtor's equity interest, not to exceed $2,400 in value, in any one motor vehicle, and the debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor.

(2) Under Illinois law, every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $15,000, which homestead is exempt from judgment.

A96

(3) Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage or, under a wage deduction summons served on or after January 1, 2006, the Illinois minimum hourly wage, whichever is greater.

(4) Under federal law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 25% of disposable earnings for a week or (ii) the amount by which disposable earnings for a week exceed 30 times the federal minimum hourly wage.

(5) Pension and retirement benefits and refunds may be claimed as exempt under Illinois law.

The judgment debtor may have other possible exemptions under the law.

THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH. The judgment debtor also has the right to seek a declaration at an earlier date, by notifying the clerk in writing at the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604. When so notified, the Clerk of the Court will obtain a prompt hearing date from the court and will provide the necessary forms that must be prepared by the judgment debtor or the attorney for the judgment debtor and sent to the judgment creditor and the judgment creditor's attorney regarding the time and location of the hearing. This notice may be sent by regular first class mail."

Date: January 16, 2025          Plaintiffs-Judgment Creditors,
                                by their attorney,

                                By:     _/s/ Asher Perlin_____
                                        Asher Perlin, Esq.
                                        4600 Sheridan Street, Suite 303
                                        Hollywood, Florida 33021
                                        Tel. 786-687-0404
                                        Email: asher@asherperlin.com

A97

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
     SHARON WEINSTOCK, et al.,    )  Case No. 23 C 2824
 4                                )
                                  )
 5                   Plaintiffs,  )
                                  )
 6         v.                     )
                                  )
 7   ISLAMIC REPUBLIC OF IRAN,    )
                                  )  Chicago, Illinois
 8                   Defendant,   )  May 27, 2025
                                  )  11:00 a.m.
 9   R.J. O'BRIEN LIMITED - UK, et )
     al,                          )
10                                )
                     Movants,     )
11

12                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MATTHEW F. KENNELLY
13

14   APPEARANCES:

15
     For the Plaintiffs:   LAW OFFICE OF ASHER PERLIN
16                         BY:  MR. ASHER PERLIN
                           4600 Sheridan Street, Suite 303
17                         Hollywood, Florida 33021

18

19

20   Court Reporter:       CAROLYN R. COX, RPR, F/CRR
                           Official Court Reporter
21                         219 S. Dearborn Street, Room 2201
                           Chicago, Illinois  60604
22                              *   *   *   *   *

23
                     PROCEEDINGS REPORTED BY STENOTYPE
24        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

25
```

A98

23

1          MR. KILLIAN:  Good morning, Judge Kennelly.

2          THE COURT:  It's Mr. Killian, right?

3          MR. KILLIAN:  Yes.

4          I'd like to pick up where Mr. Perlin just ended, but

5    not to talk about the merits of the agency or instrumentality

6    issue directly because I think that focusing on the

7    agency/instrumentality issue helps to show why this case is

8    unprecedented and, I think, improper.

9          You see, the Weinstocks are asserting essentially a

10   three-step, I kind of think of it as, a daisy chain theory of

11   personal jurisdiction in this case.  They began by asserting

12   that the Court has jurisdiction over RJO UK, then in turn, the

13   Court can exercise jurisdiction over the 16 and a half million

14   dollars of Beneathco's funds in London.  And then in turn --

15   and this is the last step -- that the Court can adjudicate the

16   ultimate question of whether Beneathco is an agency or

17   instrumentality of Iran.

18         Now, the Constitution for personal jurisdiction

19   requires that the underlying controversy -- that's the phrase

20   that the Supreme Court uses -- the underlying controversy be

21   one that arises out of the defendant's contacts here.

22         THE COURT:  Do any of those Supreme Court cases talk

23   about a post-judgment collection here?  It doesn't seem to me

24   to make any sense at all that the asset holder's contacts with

25   the forum would have to arise out of the underlying tort, which

1    in this case was the murder.

2         MR. KILLIAN:  Yeah, *Shaffer v. Heitner* discusses this,

3    I think, your Honor, where the Court acknowledges that -- we'll

4    say nine times out of ten -- that the property is actually

5    within the jurisdiction of the court, then the defendant, the

6    judgment debtor, will almost always have contacts with the

7    court itself -- or excuse me -- with the territory, the

8    jurisdiction itself.

9         It's not that the existence of the property is

10   sufficient.  Right?  That's quasi in rem jurisdiction that is

11   insufficient after *Shaffer v. Heitner*.  It's that where the

12   property exists, it's usually there because the defendant

13   himself put it there.

14        But in this instance -- and that's why I think this is

15   a situation of essentially quasi in rem jurisdiction -- on

16   Mr. Perlin's theory, RJO --

17        THE COURT:  You're giving me bad dreams from first

18   year civil procedure, which is a really long time ago.  I just

19   have to say it was the fall of 1978 and *Shaffer v.* --

20        MR. KILLIAN:  1977.

21        THE COURT:  First case we discussed.

22        MR. KILLIAN:  I kind of thought that might be the

23   case, Judge Kennelly.  I also think it was one of the first

24   cases that we discussed, too.

25        THE COURT:  I literally am having a flashback to Clyde

1   Ferguson sitting in the front of the room in Cambridge talking

2   about this.  Okay.  PTSD.

3           MR. KILLIAN:  Well, I can say I'm sympathetic as well.

4   Professor Miller was my sub procedure professor, and we spent a

5   whole unit on quasi in rem jurisdiction.  But that is what

6   Mr. Perlin is attempting to assert here on behalf of the

7   Weinstocks.  Because the theory is that RJO UK came into

8   Illinois -- I'm going to dispute that in a moment -- but that

9   we came into Illinois, and along with RJO UK, came these

10  intangible debts that RJO UK owes to anyone in the world, which

11  in this case so happens, on their theory, to be Beneathco.

12          But you see, the ultimate question that they want to

13  adjudicate here is whether Beneathco is an agency or

14  instrumentality of Iran.  That's what they have to prove.

15  That's where he just concluded his argument.  And that's not

16  something that my clients have evidence on.  It's not something

17  that my clients have a stake in.  And there's really no way for

18  there to be a truly adversarial posture here because that is a

19  dispute with Beneathco.

20          THE COURT:  Time out.  Let me make sure I'm following

21  what you're saying.

22          Basically, what you're saying is that to actually get

23  the money that RJO UK has, the account, if you will, it's not

24  enough to just drag RJO into court here.  The plaintiff is

25  actually going to have to establish what OFAC found.  It's

1  going to have to be established in this case, in other words,

2  that Beneathco is an agent or instrumentality of Iran.

3      MR. KILLIAN:  So OFAC didn't find that Beneathco was

4  an agent or instrumentality.  OFAC simply blocked the funds.

5  There are two elements that are required under TRIA

6  Section 201; one, that the funds be blocked; and, two, that the

7  person whose blocked funds are at issue is an agent or

8  instrumentality of --

9      THE COURT:  But, in other words, so what -- putting

10 aside --

11     MR. KILLIAN:  Yes, your Honor is right.  That's what

12 I'm driving at.  The ultimate merits question here, the

13 underlying dispute, which is what personal jurisdiction focuses

14 on, is that dispute that the Weinstocks have with Beneathco.

15     THE COURT:  The way this happens -- and, you know,

16 thankfully, we don't have to get involved a whole lot -- or

17 judges don't have to get involved a whole lot in post-judgment

18 collection proceedings.  Every now and then.  I have another

19 one going on right now.

20     MR. KILLIAN:  State court, usually.

21     THE COURT:  Every now and then, something happens, and

22 usually it ends up being the case from hell.  It's not this

23 case, another case.

24     But so if I were to -- if I were to say -- Beneathco

25 isn't in here right now, but if I were to say that we've got

1  jurisdiction over R.J. O'Brien and, therefore, over these

2  funds, presumably, Beneathco would have every incentive to come

3  in here and contest it.  So there would be an adversary

4  proceeding.  At least it'd be an opportunity for one.

5       MR. KILLIAN:  Well, incentive is not what personal

6  jurisdiction is ultimately about, though, right?  Personal

7  jurisdiction is about the fairness to the ultimate defendant.

8  And that's who I think Beneathco is.  They're the ultimate

9  defendant here.  And the fairness of whether --

10      THE COURT:  But to collect from J.P. Morgan Chase, I

11  don't have to find that I have jurisdiction over the underlying

12  plaintiff -- or the underlying defendant.  I have to find I

13  have jurisdiction over J.P. Morgan Chase.

14      MR. KILLIAN:  I think the reason, though, that that

15  doesn't come up most of the time, your Honor, is that you're

16  dealing with a judgment debtor whose accounts are in possession

17  of J.P. Morgan Chase.  But here the judgment debtor is the

18  state of Iran.  And so what TRIA allows these plaintiffs to do

19  is to extend that judgment debt and collect assets of third

20  parties.

21      THE COURT:  Right.

22      MR. KILLIAN:  They contend related third parties, but,

23  nonetheless, third parties.  And it's that extension of

24  liability from the judgment debtor to these third parties on an

25  agency or instrumentality theory that takes us out of the

1  ordinary case, the ordinary post-judgment collection case,

2  where JPMC comes in.  And the judgment debtor has an account,

3  and the money is sitting in an account somewhere in Chicago

4  where, therefore, you know, the Court doesn't have to do that

5  ultimate question, right?  The question of the plaintiffs'

6  entitlement is established by the judgment alone.

7       Whereas in the Weinstocks' case, the plaintiffs'

8  entitlement --

9       THE COURT:  They got to show something additional.

10       MR. KILLIAN:  Bingo.

11       And my point, your Honor, is I can't prove that at the

12  end of the day.  I don't have Beneathco's information.  I don't

13  have their evidence, and I don't have their incentives.  And so

14  it sets up --

15       THE COURT:  Okay.  Fair enough.  Can we get off of

16  this, though, and onto the other thing that you want to talk

17  about?

18       MR. KILLIAN:  Absolutely.

19       THE COURT:  Which is, how did this transaction happen?

20       MR. KILLIAN:  Which transaction?

21       THE COURT:  The liquidation.  The thing that RJO UK

22  used RJO Chicago, or what I'm calling RJO Chicago, to carry

23  out.

24       MR. KILLIAN:  Okay.  So what the record shows -- I'll

25  set it up.  I'll build up.  So RJO UK, is what we call it, is a

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON WEINSTOCK, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 2824** |
| | ) | |
| **ISLAMIC REPUBLIC OF IRAN,** | ) | |
| | ) | |
| **Defendant,** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs, the family members of Yitzhak Weinstock and the personal

representative of his estate, obtained a judgment in another district against the Islamic

Republic of Iran pursuant to the "terrorism exception" of the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1605A. *Weinstock v. Islamic Republic of Iran*, No. 17-

23272, 2019 WL 1507255 (S.D. Fla. Apr. 5, 2019). To attempt to collect the judgment,

the plaintiffs have registered the judgment in this Court and served citations to discover

assets to respondents R.J. O'Brien Ltd. (RJO UK), its parent company JVMC Holdings

Corp., and two of RJO UK's board members, James Gabriele and Brad Giemza, who

live in the United States. The plaintiffs also issued subpoenas to these respondents

and to R.J. O'Brien & Associates LLC (RJO US), an Illinois-based affiliate of RJO UK

allegedly involved in liquidating the positions of Beneathco DMCC—an alleged agent or

instrumentality of Iran.

The respondents have moved to quash the citations and the subpoenas. As

relevant to this opinion, RJO UK contends the Court lacks personal jurisdiction.  In response, the plaintiffs have moved for turnover of the assets sought and in the alternative to compel discovery.  This opinion solely addresses the plaintiffs' alternative motion to compel further jurisdictional discovery.

The Court may exercise personal jurisdiction over a non-resident entity if the three requirements of specific jurisdiction are met:  "(1) purposeful availment—the [entity] must have purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the [entity]'s forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice."  *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (per curiam).

When a party challenges personal jurisdiction, the plaintiffs must "[a]t a minimum . . . establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted."  *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).  This is a low bar.  The plaintiffs need only advance "'proof to a reasonable probability' of the facts necessary to establish federal jurisdiction."  *Indag v. GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 971 (N.D. Ill. Dec. 9, 2015) (St. Eve, J.) (quoting *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 316 (7th Cir. 1996)).  And because the respondents challenge personal jurisdiction on a motion to dismiss, the Court must also "resolve any factual disputes in favor of the plaintiff[s]."  *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *see also Indag*, 150 F. Supp. 3d at 972.

2

A106

The plaintiffs have established a "colorable or *prima facie*" case of personal jurisdiction over RJO UK through its use of an Illinois-based affiliate, RJO US, in connection with the trades that produced the assets at issue.  In support of jurisdiction, the plaintiffs cite RJO UK's statements in litigation before the High Court of Justice of England that "the sums held on behalf of Beneathco represent the proceeds of trades carried out by a US company (RJO US)" and that the relevant trades "were cleared by [RJO UK]'s US affiliate, . . . RJO US."  Pls.' Mot. for Turnover, Mot. in the Alt. to Compel Discovery, & Opp'n to Respondents' Mot. to Quash, Ex. D ¶¶ 11(d), 30(e)(iii).  These statements at least suggest that RJO UK purposefully chose to conduct the relevant trades through RJO US, as the trades were conducted on the ICE Futures Europe exchange and only RJO US—not RJO UK—is "an ICE exchange clearing member firm."  *Id.* ¶ 11(d).  Finally, the plaintiffs also cite findings from the United States Department of Treasury's Office of Foreign Assets Control (OFAC) that Beneathco materially assisted Iran by supplying it petroleum, indicating that Beneathco is an agent or instrumentality of Iran whose blocked assets can be used to satisfy the plaintiffs' judgment.  *Id.* Exs. A–C; Terrorism Risk Insurance Act of 2002 § 201(a), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note).

Through these statements by RJO US and OFAC's findings, the plaintiffs have established "a reasonable probability" that discovery will provide further evidence that: (1) RJO UK purposefully availed itself of Illinois's jurisdiction through use of an Illinois-based affiliate to liquidate Beneathco's positions; (2) the plaintiffs' judgment enforcement action relates to this liquidation as the proceeds produced from these trades are blocked assets of Beneathco, an alleged agent or instrumentality of Iran; and

A107

(3) RJO UK's choice to utilize an Illinois affiliate makes this Court's exertion of jurisdiction fair and just.  In other words, the plaintiffs have established a "colorable or *prima facie*" case that this Court has specific personal jurisdiction over RJO UK.

RJO UK protests that its use of RJO US to clear Beneathco's trades was too "technical" to be a sufficient minimum contact with Illinois, as RJO US's involvement amounted to mere bookkeeping of already-made trades.  *See* Consolidated Reply in Supp. of Mots. to Quash at 4.  This response indicates the existence of a factual dispute that the Court cannot resolve on the current record.

The Court therefore grants the plaintiffs' motion to conduct limited jurisdictional discovery.  Specifically, consistent with the subpoena the plaintiffs served on RJO US, the Court directs the citation respondents and RJO US to file, by June 12, 2025, one or more sworn declarations, along with supporting documents, sufficient to show with particularity:  (1) "The actions taken and activities performed by [RJO US] on behalf of [RJO UK], for the benefit of [RJO UK], and/or pursuant to an agreement or arrangement with [RJO UK], in respect to the clearing and carrying out of the Beneathco trades," (2) "[RJO US's] role and involvement in generating 'the proceeds of trades' in Beneathco's investments that were 'carried out' by [RJO US]," and (3) "The titles and/or captions, dates of execution, and general subjects and purposes of the written instrument(s) . . . and/or verbal agreements, which established and governed the system, mechanism, and/or arrangement between [RJO US] and [RJO UK], pursuant to which [RJO US] carried out and cleared the Beneathco trades."  *See* Subpoena to Testify at a Deposition in a Civ. Action to RJO US at 4, Dkt. No. 28, Ex. A.  More generally, the respondents' and RJO US's submissions should be sufficient to describe,

4

A108

in detail, how the transaction(s) involving the liquidation of Beneathco's positions

occurred, from the beginning to the very end, and who (and what entities) did what.  The

case is set for a telephonic status hearing on June 16, 2025 at 9:00 a.m., using call-in

number 650-479-3207, access code 2305-915-8729.  The Court will determine, at that

time, what further proceedings, if any (supplemental briefs, arguments, and/or a

hearing) will be required and when they will be held.

Date:  May 28, 2025

_____
MATTHEW F. KENNELLY
United States District Judge

5

A109

# EXHIBIT A

## FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**(EASTERN DIVISION)**

| | | |
|---|---|---|
| SHARON WEINSTOCK, et al., | ) | |
| | ) | |
| Plaintiffs – Judgment Creditors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN | ) | |
| | ) | Case No. 1:23-cv-02824 |
| Defendant – Judgment Debtor, | ) | |
| | ) | Honorable Matthew F. Kennelly |
| R.J. O'BRIEN LIMITED "c/o" JAMES | ) | |
| GABRIELE and BRAD GIEMZA and JVMC | ) | |
| HOLDINGS CORP., joined by R.J. O'BRIEN | ) | |
| & ASSOCIATES, LLC, JAMES GABRIELE | ) | |
| and BRAD GIEMZA, | ) | |
| | ) | |
| Citation Third-Party Respondents. | ) | |

## <u>DECLARATION OF DAVID RUSSELL</u>

I, David Russell, declare as follows:

1.　　I am over the age of 18, a resident of London, England, and the Senior Director of Risk for R.J. O'Brien Limited (UK) ("RJO UK"). My responsibilities focus on managing risk arising from clients' trading positions and changing market conditions, and I get involved with many of the operational issues that are discussed herein as part of my regular duties.

2.　　I describe below the process by which trades made pursuant to the rules of ICE Futures Europe ("IFEU") were executed and cleared. Many of these events are all done through computer programs and functionality, so I have endeavored to describe the processes, with which I am familiar due to my work over the past several years.

### *<u>Beneathco's account</u>*

3.　　I am aware that Beneathco DMCC ("Beneathco") opened an account with R.J.

O'Brien (MENA) Capital Limited ("RJO Dubai") as its executing broker and RJO UK as its clearing firm.

4.      The trades that Beneathco made through RJO Dubai were held as positions in Beneathco's account at RJO UK. █████████████████████████████

██████████████████████████████████████

████████████████████████ In addition, RJO UK, as Beneathco's clearing firm, held cash collateral as margin for the transactions, accounting to Beneathco for any profits and collecting from it for any losses.

5.      █████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████ IFEU is located in London, UK.

***Liquidation of positions in Beneathco's account***

███████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

7.      After trades are executed, they must be "cleared" by a clearing organization, so that the results of the trades can be assigned to the account owners. The clearing organization is often

---

[1]  I understand that Beneathco was added to the OFAC Specially Designated Nationals list on January 23, 2020.

associated with the exchange which in this case was ICE Clear Europe Limited ("ICEU"), which is located in the UK.

8.     Clearing can be effected only by a firm which holds a clearing membership. ▮

▮

▮     In order to clear trades made on or pursuant to the rules of IFEU, RJO UK uses and used the clearing membership at ICEU held by R.J. O'Brien & Associates LLC ("RJO US"). ▮

3

A113

18.    I understand that the Weinstocks have asserted that the liquidating trades were "routed through" Illinois and that the liquidation was done by RJO US.  That is not correct.  All of these events were conducted by RJO UK and RJO Dubai.

A114

I declare under penalty of perjury that the foregoing is true and correct based on my knowledge and experience and company records.

Executed on
6/12/2025

David Russell

5

# EXHIBIT A-1

A117



A118



A119

# EXHIBIT A-2



# EXHIBIT B

## FILED UNDER SEAL

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)**

| | | |
|---|---|---|
| SHARON WEINSTOCK, et al., | ) | |
| | ) | |
| Plaintiffs – Judgment Creditors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISLAMIC REPUBLIC OF IRAN | ) | |
| | ) | Case No. 1:23-cv-02824 |
| Defendant – Judgment Debtor, | ) | |
| | ) | Honorable Matthew F. Kennelly |
| R.J. O'BRIEN LIMITED "c/o" JAMES | ) | |
| GABRIELE and BRAD GIEMZA and JVMC | ) | |
| HOLDINGS CORP., joined by R.J. O'BRIEN | ) | |
| & ASSOCIATES, LLC, JAMES GABRIELE | ) | |
| and BRAD GIEMZA, | ) | |
| | ) | |
| Citation Third-Party Respondents. | ) | |

## <u>DECLARATION OF CHRISTOPHER BOVE</u>

I, Christopher Bove, declare as follows:

1.     I am over the age of 18, a resident of the State of Illinois, and the Chief Compliance Officer and Executive Director and Head of Core Compliance at R.J. O'Brien & Associates LLC ("RJO US"). I am responsible for overseeing the compliance function and personnel at RJO US, and also regularly interact with personnel from RJO UK and other affiliates of RJO US. Those interactions have made me familiar with various operational functions at RJO UK and other affiliates of RJO US, on many different financial exchanges, including ICE Futures Europe ("IFEU").

2.     I describe below the process by which trades made pursuant to the rules of IFEU are executed and cleared. For many of these events, they are all done via computer programs and

functionality, so I have described the processes, with which I am familiar due to my work over the past several years, to respond.

3.     I am aware that Beneathco DMCC ("Beneathco") opened an account with R.J. O'Brien (MENA) Capital Limited ("RJO Dubai") as its executing broker and R.J. O'Brien Limited (UK) ("RJO UK") as its clearing firm.

4.     Beneathco did not have an account with RJO US, nor did it have any relationship with RJO US.

5.     After trades are executed (meaning the buyer and seller have agreed to the terms of the trade), they must be "cleared" by a clearing organization, such that the results of the trade can ultimately be assigned to the account owners. The clearing organization is often associated with the exchange which in this case was ICE Clear Europe Limited ("ICEU"), which I understand to be located in the UK. Clearing provides for the post-trade operations that allow the parties to the trade to receive the results of their respective trades, whether additional derivatives contracts if purchased or the funds associated with the sale of such contracts.

6.     Clearing can only be effected by a firm who holds a clearing membership with the exchange.

▮     In order to clear trades made on or pursuant to the rules of IFEU, RJO UK uses and used the clearing membership of RJO US. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

A130



A131

14.     I understand that the Weinstocks have asserted that the liquidating trades were "routed through" Illinois and that the liquidation was done by RJO US, which is not correct. Further, RJO US did not generate the proceeds of the liquidating trades. All of these events were conducted by RJO UK and RJO Dubai, as described further here and in the Declaration of David Russell.

I declare under penalty of perjury that the foregoing is true and correct based on my knowledge and experience and company records.

Executed on June 12, 2025

*Christopher E. Bove*
_____
Christopher Bove

4

A132

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I electronically filed the foregoing Separate Appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

Asher Perlin, Attorney
Law Office of Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, FL 33021
(786) 687-0404

Counsel for Appellees
Sharon Weinstock, et al.

/s/ Bryan Killian